RAGON v. HOWARD.

(*Knoxville*. September 30, 1896.)

1. MECHANICS' LIEN. *Policy of the law in reference to.*

It is the policy of our law to protect and enforce the lien of mechanics and furnishers, and not to allow them to be defeated by any technical niceties of construction. (*Post, p. 341.*)

Cases cited and approved; Burr v. Graves, 4 Lea, 552; Cole Mfg. Co. v. Falls, 90 Tenn., 466.

2. SAME. *The purchaser, not his vendee, is owner under executory contract.*

The purchaser is not the agent or contractor of his vendor, but the owner of the property within the meaning of Acts 1889, Ch. 103, relating to mechanics' liens, where he takes possession of a lot and treats it as his own under an executory contract, which leaves the legal title in the vendor to secure unpaid purchase money, but contemplates that the purchaser shall erect a building thereon, and, after clearing the property of all liens of mechanics and material men, shall receive an advance from the vendor upon a mortgage thereof; and, in such case, mechanics and material men employed by the purchaser in erection of the building, cannot obtain personal judgment against the vendor for their demands, and they are not required to give notice either to the vendor or to purchaser to perfect their liens. (*Post, pp. 338–345.*)

Act construed: Acts 1889, Ch. 103.

Cases cited and approved: Alley v. Lanier, 1 Cold., 540; 123 Ill., 98; 5 Am. St. Rep., 490; 126 Ill., 72 (S. C., 9 Am. St. Rep., 532); 40 Minn., 441; 12 L. R. A., 33.

3. SAME. *Has priority over vendor's mortgage.*

The vendor in an executory contract under which the purchaser takes possession of the lot and treats it as his own, and which contemplates the erection of a building by him and the passing of the title and execution of a mortgage to secure the purchase price and advances on the building, thirty days after

completion of the building and proofs that there are no mechanic's liens, is not the owner within the meaning of Acts 1889, Ch. 103, requiring of subcontractors thirty days' notice to the owner of a mechanic's lien, and notice to the vendor is not essential to give such a lien priority over his mortgage subsequently executed in compliance with the contract. (*Post*, *pp. 338–345.*)

Act construed: Acts 1889, Ch. 103.

Cases cited and approved: 45 N. Y., 766; 56 N. Y., 610; 45 Am. Dec., 678; 61 Am. Dec., 681; 36 Minn., 9.

4. SAME.   *Adjustment of equities of third persons.*

Where brick were furnished for a building situated on two adjoining lots, the titles to which were derived from distinct sources, and which were subject to the distinct claims, liens, and equities of third persons, the furnishers' lien against one of the lots was limited, in a contest among such third persons, to the value of brick used on that particular lot. (*Post*, *pp. 345, 346.*)

5. SAME.   *Attachment must be issued and levied within a year.*

A mechanic's or furnisher's lien is abandoned if the lien claimants fail to have attachment issued and levied within one year after the accrual of their right.   Mere commencement of suit in time, followed by issuance and levy of attachment after expiration of one year, will not save the lien. (*Post*, *pp. 346, 347.*)

Cases cited and approved: Barnes *v.* Thompson, 2 Swan, 316; Brown *v.* Brown, 2 Sneed, 437; Burr *v.* Graves, 4 Lea, 552; Shelby *v.* Hicks, 5 Sneed, 200; Dollman *v.* Collier, 92 Tenn., 660.

6. APPEAL.   *By mortgagee, effect of.*

A mortgagee who is a party defendant to an action for the enforcement of a mechanic's lien, and whose mortgage is by the decree below subordinated to the mechanic's lien, may contest, on his appeal, the existence and regularity of the lien, although the owner and mortgagor, by failing to appeal, has waived any right to complain, so far as he is concerned. (*Post*, *p. 347.*)

7. MECHANICS' LIEN.   *Intervening petition insufficient.*

The mere filing by a mechanic's lien claimant of an intervening petition, under a bill by another lienor within the time under the statutes that attachment must be issued and levied to preserve the lien, without making anyone a party, does not save the lien; nor does the fact that it was agreed that the papers

in the intervention. which had been lost, might be supplied; nor the fact that after the expiration of the time limited by the statute, a bond was allowed to be filed *nunc pro tunc.* (*Post, pp. 347, 348.*)

8. SAME. *Not lost, if attachment is issued and levied in time, by failure to attach under supplemental bill.*

It is not essential to the preservation of a mechanic's lien under the statute requiring an attachment to be issued and levied within one year from the accrual of the right to a lien, that the trustee and beneficiary in a deed of trust from the owner, given after the accrual of the lien, shall be proceeded against within such time; but it is sufficient if a bill against the owner is filed and attachment issued and levied within the year, and the other parties may be thereafter brought in by an amended and supplemental bill, without the issuance of another attachment. (*Post. pp. 348–350.*)

9. SUPREME COURT. *Sustains findings of Chancellor and Court of Chancery Appeals, when.*

An assignment of error in a suit to enforce mechanics' liens. that the claims found by the Master were not sufficiently proved, will be held insufficient where there is some proof to sustain them, and the Chancellor and Court of Chancery Appeals have concurred in the Master's findings. (*Post, p. 350.*)

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

TOMLINSON FORT for Ragon.

WHITE & MARTIN for Howard.

J. H. McLEAN and ELDER & MILLIGAN for Cotter Bros. & Murphy.

Ragon *v.* Howard.

J. M. TRIMBLE for Montague.

CLIFT & CANTRELL for Seagle.

CLARK & BROWN and BROWN & SPURLOCK for Cincinnati Investment Co.

A. S. DICKEY for J. S. Bell.

A. W. GAINES for Truxal & Dunmeyer.

WILKES, J.   These several bills, consolidated and heard together, were filed to have declared and enforced mechanics' and furnishers' liens on a block of buildings erected by defendant, Howard.   The Chancellor held that the complainants were entitled to liens as against Howard and the Cincinnati Investment Co., and fixed the priorities of the several bills upon a lot of eighty-seven feet sold by the investment company to Howard, but not upon the remainder of the lot, which was sold to Howard by Dickey.   He decreed that all of the complainants had liens prior to that of the investment company, under a deed of trust executed to it, except that as to Ragon, receiver, there was an admission that the investment company had a prior lien for $8,500 of purchase money.   He declined to give any personal judgment against the investment company. There was a reference to report the amounts of the debts and priorities, and a report thereon, and numerous exceptions to the report, which were all overruled except one as to the number of brick furnished

13 P—22

by Montague, and the sum due him was fixed at $1,850.06. Judgments were rendered against Howard for the amount of the debts claimed, but denied as to the investment company. The lot was ordered sold if the lien debts were not paid. The lien of Ragon, receiver, was declared to be inferior to that of the other creditors and to the investment company, to the extent of $8,500 purchase money, and all the other creditors were given priorities and placed on an equal footing.

The investment company and Montague alone appealed and assigned errors. The cause has been heard by the Court of Chancery Appeals, and they have affirmed the decree of the Chancellor, and from their decree the investment company prayed a broad appeal, and Montague appealed from so much of the decree as refused him a lien upon the entire Howard block and a personal judgment against the investment company, and taxed him with half the costs, and both parties have assigned errors.

The errors assigned by the investment company are, in substance, that the Court erred in holding that it was not necessary for the lien claimants to give the thirty days notice required by the Act of 1889 to be given the owner of the property. This error is based upon the theory that Howard had no title to the lot, and that it remained the property of the investment company until thirty days after the building was finished, and hence the lien claimants could fasten no liens on the lot by virtue of any

contracts with Howard, and such lien could only be fixed by the notice prescribed by Acts of 1889, to the investment company, as owner. The contention of the investment company rests primarily upon the proper construction and effect of a paper executed by it May 6, 1892, to Mr. C. C. Howard, in the following language:

"DEAR SIR—Referring to the several conversations we have had concerning the sale to you of the property on Whiteside Street adjoining your building, I beg leave to say we will sell all the frontage we have on Whiteside Street, which is eighty-seven feet more or less, same depth as your lot, to you for $8,500, payable in five years, interest at 6 per cent. per annum, payable semiannually, and, should you purchase the property, we will agree to loan you $5,500 on a building to be erected on the same property, the value of which shall not be less than $10,000, the money to be paid you when the building is completed and its value is certified by a competent person whom we may name, you to pay the expense of such examination and report. This $5,500 is not to be paid, however, until thirty days after the building is completed, and satisfactory proof is given that there are no mechanics' liens or prior mortgages to that which will be given to us to secure the payment of the loan. Please advise us of your final acceptance of this proposition.

"ADOLPH S. OCHS, *Sec'y.*"

Howard went into possession of the lot under this paper, and commenced the erection of a building on it, and one adjoining bought of Dickey, and complainants did work and furnished material to be used in construction of the buildings. While the block was being built the company advanced part of this $5,500 to Howard, and, thirty days after its completion, it paid the balance of the $5,500 agreed to be paid to him. It executed a deed to Howard for the lot, reciting a consideration of $14,000, and he executed to Geo. W. Ochs a deed of trust to secure the $14,000. The deed to Howard was executed November 12, 1892, and the deed of trust to Ochs was executed November 18, 1892, but both were registered the same day, November 21, 1892. No notice was given to the investment company by any of the complainants of any lien within thirty days, as prescribed by the Acts of 1889.

It is insisted that there was no fraud in the contract, and the mechanics and furnishers were bound to take notice that Howard, though in possession, was not owner, and it was their duty to inquire into and ascertain his interest, and they have no claim or lien against the investment company, and could get none on the lot except by giving the notice provided by the Act of 1889 to be given to the owner of the property, and, having failed to give such notice, the investment company was at liberty to secure itself, according to its contract with Howard, for its purchase money and money advanced,

by making the deed to Howard and taking the deed of trust back, as it did. The contention, narrowed down to its ultimate basis, is that the investment company was the owner of the property in the sense of the statute, and entitled to the notice, and, not having been given any notice, held the property free of liens of mechanics and material men. It is evident that if the Act of 1889 applies to this case, and that the investment company was the owner of the property in the sense in which the term "owner" is used in that statute, then complainants cannot succeed, as no notice is claimed to have been given. It is, and has been, the policy of our law to protect and enforce this lien of mechanics and furnishers, and not to allow them to be defeated by any technical niceties of construction. *Burr* v. *Graves*, 4 Lea, 552; *Cole Mfg. Co.* v. *Falls*, 90 Tenn. (6 Pick.), 466. At the same time, it cannot be held that the lien will be protected when there is an entire want of diligence and care to ascertain the true state of the title to the prejudice of the real owner.

In this case it is evident that the legal title to the property in controversy was not in Howard, but in the investment company, and an examination in the proper office would have disclosed this fact. At the same time, it is plain that the investment company allowed Howard to take possession of the lot and treat it as his own, and that its contract clearly contemplated that Howard should erect the buildings with the expectation and intention of putting the

legal title in him when the buildings were com-
pleted, and it is also evident that it expected and.
stipulated to be released from all liability for liens
of mechanics and furnishers, and believed it had done
so by the terms of its contract with Howard. The
complainants, however, had no knowledge of this
agreement between the company and Howard, and,
seeing the latter in possession and dealing with it
as his own, took it for granted that he was the
owner. Under these circumstances, have they liens
on the property in controversy? The exact ques-
tion here presented has not been decided in Tennessee.
The case of *Henderson* v. *Connelly*, 123 Ill., 98,
involves facts quite similar to those in this case.
In that case the Court said: "If Henderson & Co.,
who were the vendors, authorized and empowered
Sharp, the purchaser, to cause a building to be
erected on the property while the legal title re-
mained in them, upon what ground can they now,
after the labor has been expended and materials fur-
nished, claim that the mechanics, who furnished what
they by contract authorized, shall look alone to the
title held by the purchaser? Certainly no principle
of equity or fair dealing would sanction a precedent
of that character. The vendors, by their contract,
have subjected their title to the property to the lien
of the petitioner, and the decree properly, in our
opinion, authorized a . sale of the legal title and a
priority of payment to the petitioner." *Henderson*
v. *Connelly*, 5 Am. State Rep., 490. See, also,

*Paulsen* v. *Manske*, 126 Ill., 72; 9 Am. State Rep., 532; *Hill* v. *Gill*, 40 Minn., 441; *Bohn Mfg. Co.* v. *Kountze*, 12 L. R. A., 33; Warville on Vendors, Vol. I., pp. 8, 9.

When a vendor holding the legal title consents for and directs a vendee to have improvements placed upon the property, with the expectation and intention of putting the legal title in him when the buildings are completed, if the legal title is thus placed, the lien of the mechanic attaches as against both parties. *Rollins* v. *Cross*, 45 N. Y., 766. In Warville on Vendors, Vol. I., Sec. 23, p. 209, it is said, in substance, that where a vendor, by his contract of sale, expressly authorizes the vendee to make erections and improvements on the premises, and particularly if he agrees to advance money to aid in such improvements, and before the termination of the contract and notice thereof a mechanic performs labor or furnishes material for the erection of buildings on the land, the latter will not be required to look alone to the title held by the vendee, but may enforce his lien against the legal as well as the equitable title.

To the same effect is Phillips on Mechanics' Liens (3d Ed.), Sec. 69, citing and commenting on many cases which proceed upon the idea that under such circumstances the party purchasing and in possession is the "owner," in the sense of the statute, and unless he shall be so considered mechanics and material men will be defrauded of their liens.

Again, it is held that when a mechanic or materialman has a lien as against the purchaser of a lot, or one who has a contract to purchase it, for improvements put upon it, and the purchaser acquires the legal title, the lien covers all the time of the work, and is a charge upon the fee subsequently acquired. *McGraw* v. *Godfrey*, 56 N. Y., 610; Kneeland on Mechanics' Liens, Sec. 19. See, also, *Lyon* v. *McGuffey*, 45 Am. Dec., 678; *Loomis* v. *Hogan*, 61 Am. Dec., 681, *et seq.;* Phillips on Mechanics' Liens, Sec. 69.

In *Lyon* v. *McGuffey*, *supra*, it is held that the mechanics' lien on an equitable estate attaches to an after acquired legal title the moment it vests in the same person. *Coleman* v. *Goodnow*, 36 Minn., 9; Am. & Eng. Enc. L. (Vol. XV.), pp. 11, 12, and notes.

We are aware that there are many cases in real or apparent conflict with the holding in these cases (Phillips on Mechanics' Liens, Sec. 70), but we consider the cases above cited as most in accord with the provisions and spirit of our own statute and decisions. We think it evident that the Act of 1889, Ch. 103, was not intended to apply to this class of cases, but was intended to apply to cases where the owner of the property has employed a mechanic to construct a home upon his land for himself, and such mechanic has employed a subcontractor or bought materials. If the subcontractor or material man desire to hold the owner therefor, as well as

the original contractor, he shall give the thirty days notice therein provided to the owner of the property or lose his lien as against such owner. In this case, Howard cannot be treated as a contractor for building the home on the property of the investment company, as owner, but must be considered as the owner himself, whose title has not yet been perfected, but which it is agreed may be perfected. If Howard can be considered as anything else than the owner, and a contractor for himself, he would more properly stand in the light of an agent for the company to have the buildings erected, in which event the complainants right to a lien would be apparent and clear as against the company. *Alley & Bush* v. *Lanier et als.*, 1 Cold., 540.

We are of opinion, therefore, that complainants were not, under the facts of this case, required to give the notice prescribed by the Act of 1889, but they had a right to have their liens upon the property without such notice if there were nothing else in the case.

Complainant Montague assigns as error that he was not allowed personal judgment against the investment company, and that his lien was limited to the quantity of brick which went upon the lot bought from the investment company, and did not extend to all the brick furnished for the entire block. If this latter contest were alone between Montague and Howard, this contention would probably be correct, but in view of the equities and claims of the dif-

ferent parties, some of whom claim and have liens only on that part of the property bought from the investment company, the remainder being the property of Howard alone, and in which the investment company had no interest or concern, the Court of Chancery Appeals limited his lien as against the property to the brick which actually went upon the lot bought from the investment company, and we can see no error in this holding under the facts as found, and we see no grounds upon which Montague was entitled to a personal decree against the investment company, except upon the idea that Howard was but the agent of the investment company to build the house, and we are not satisfied such was the case, but rather that Howard was an independent builder and an owner in the sense of the law, and built for himself and not for the investment company. We are of opinion, therefore, that the errors assigned by Montague are not well taken.

It is next assigned as error by the investment company that the Court of Chancery Appeals did not hold that the failure of the lien claimants to issue and levy attachments within a year from the accrual of their rights to a lien was an abandonment of the lien. That Court held "that if the suit was brought in time, attachments might be issued and levied at any time during the pendency of the suit; and while it would be fatal to the lien not to take out attachment at any time, still it was not necessary that it be sued out and heard within the year, the attach-

ment in such cases being auxiliary and not original.''
Citing *Brown* v. *Brown*, 2 Sneed, 437; *Burr* v.
*Graves*, 4 Lea, 552; *Barnes* v. *Thompson*, 2 Swan,
312; *Shelby* v. *Hicks*, 5 Sneed, 200; *Dolman* v.
*Colyar*, 8 Pickle, 660.

We think in this the Court of Chancery Appeals
is in error, and that the attachment must be issued
and levied within the year in order to preserve the
lien. In *Barnes* v. *Thompson*, 2 Swan, 316, the
Court uses this language: ''To secure the benefit of
his advantage over all others who might have claims
equally just against the same debtor, this particular
creditor is required, at the commencement of his
action, to show that he holds the property on which
he has done the work liable for his debt by attach-
ing it.'' And again: ''It is reasonable to conclude
that it was the intention of the Legislature to avoid
these and other difficulties by requiring the favored
creditor to commence his suit either in law or
equity, by attachment, if he desire to rely upon
his lien.'' And again: ''We do not say that the
mechanic creditor may not proceed by summons,
but what we decide is that the benefit of his lien
can only be preserved by attachment.''

Even though Howard, by not appealing, may
have waived any right to complain, so far as he
is concerned, the investment company, as a holder
of the mortgage on the property, has a right to
contest the existence and regularity of the liens.

The Court of Chancery Appeals held that this

assignment only applied to or affected the claims of Montague, Ragon, and Strong Bros., and we therefore only consider their cases. As to the status of Strong Bros.: These claimants filed a petition as intervenors under the bill of Cotter Bros. & Murphy. No process was prayed, issued, or served, and no attachment was issued and levied. After being filed the petition was lost, and it was afterwards, by agreement, supplied. A bond was allowed to be filed *nunc pro tunc* in May, 1895, more than twelve months after the accrual of the lien. The Court of Chancery Appeals held that, under the provisions of our laws relating to attachments and providing for their amendment, these creditors should not be excluded.

We are unable to see any tenable ground upon which they can be held to have acquired or preserved any lien. The mere filing of the petition, without making anyone a party, cannot give the petitioner a right to any lien. Nor can the fact that it was agreed that the papers which had been lost might be supplied, have that effect, and the giving of the bond *nunc pro tunc*, without more, could have no such effect. We are of opinion, therefore, that the Court of Chancery Appeals was in error in giving to Strong Bros. any lien, and the decision of that Court as to these claimants is reversed. As to Ragon, there was no attachment within the year, and he acquired no lien.

As to the status of Montague, it appears that

he filed his bill in time, and attachment under it was issued and served, but his original bill was against Howard only.

More than twelve months after his lien had accrued, Ochs, trustee, and the investment company were made parties by amended and supplemental bill. Under this latter bill no attachment was issued or asked for. Howard, as heretofore stated, is now making no defense and has not appealed. As to him the attachment was in time, and the question is, Was it necessary that the investment company should have been proceeded against at the same time with Howard in order to preserve the lien? Under the facts of the case we think it was not. The legal title to the property was put in Howard by the investment company. It is immaterial how long it remained, whether six days, as the record shows, or only for the moment.

The lien of the mechanic being in existence, fastened upon it and became operative, and especially would this be so as against the investment company and the mortgage made for its benefit. It is not the case of a disinterested third person acquiring title and contending for priority, but the mortgage is for the benefit of the investment company, which had authorized Howard to act as owner, to erect the buildings and purchase the material under an agreement to convey to him when the buildings were completed. We are of opinion, therefore, that Montague preserved his lien by attaching the property in the

original suit to which Howard alone was a party, and the amended bill was one simply to test priorities with the investment company. There is no error, therefore, as to Montague.

The last error assigned is that the claims were not properly proven on reference to the Master. It is sufficient to say there is some proof to sustain them, and the Clerk and Master, Chancellor, and Court of Chancery Appeals have concurred in their finding, and this assignment must be held insufficient.

The decision of the Court of Chancery Appeals is modified as herein indicated. The costs of the Court below will be paid as adjudged by the Chancellor and in the Court of Appeals, and this Court will be paid one-half by the investment company and the other half equally by Strong Bros., Montague, and Ragon.