WILLIAMS v. BIRMINGHAM & N. W. RY. Co. *et al.*

(*Jackson.* April Term, 1914.)

1. **RAILROADS.** Liens for labor. Suit to enforce. Bill. Description. Definiteness.

A bill to enforce a lien for railroad construction work must, in the absence of an attachment, describe the property on which it is sought to enforce the lien with sufficient definiteness to identify it and segregate it. (*Post, p.* 684.)

Act cited and construed: Acts 1891, ch. 98.

Case cited and distinguished: Luttrell v. Railroad, 119 Tenn., 492.

2. **RAILROADS.** Liens for Labor. Suit to enforce. Bill. Sufficiency.

A bill to enforce a lien on a railroad for construction work, which alleges that defendant railroad company owned and operated a line of railway from a designated point through enumerated counties, that codefendant, the principal contractor, contracted with the railway company for the construction of its line of road, and that complainant performed work described, sufficiently identifies and locates the line of railroad on which the lien is claimed, as required by Acts 1891, ch. 98, secs. 2, 3. (*Post, p.* 684.)

Act cited and construed: Acts 1891, ch. 98.

Case cited and distinguished: Luttrell v. Railroad, 119 Tenn., 492.

3. **STATUTES.** Construction. Rules of construction.

The rule for the construction of statutes to which all other rules must yield is that the intention of the Legislature must prevail. (*Post, pp.* 685-690.)

Acts cited and construed: Acts 1883, ch. 220; Acts 1891, ch. 98.

Williams v. Railroad Co.

Code cited and construed:   Sec. 399 (S.).

Cases cited and distinguished:   Barnes v. Thompson, 32 Tenn., 314.

Cases cited and approved:   Campbellville Lumber Co. v. Hubbert, 112 Fed. 718; Union Bank v. Laird, 15 U. S., 390; Brown v. Hamlett, 76 Tenn., 735; Gold v. Fite, 61 Tenn., 248; Maxey v. Powers, 117 Tenn., 103; Alley v. Lanier, 41 Tenn., 541; Kay v. Smith, 57 Tenn., 42; Steger v. Arctic Refrigerator Co., 89 Tenn., 453; Ragon v. Howard, 97 Tenn., 341.

4. STATUTES.   Construction.   Legislative intent.

The court, in seeking to ascertain the intent of the Legislature in adopting a statute, must look to the whole statute, and give to it such a construction as will effectuate the legislative purpose.   (*Post, pp.* 685-690.)

5. RAILROADS.   Mechanics' liens.   Enforcement.   Venue.

Acts 1883, ch. 220,. as amended by Acts 1891, ch. 98, giving to subcontractors and laborers who perform work in the construction of a railroad a lien thereon, which "may be enforced by suit . . . in the circuit or chancery court of the county or district where the work . . . was done," does not limit the venue of suits to enforce liens, and does not prohibit suits in the county where the principal office of a railroad is situated and in which a material part of its line is located, though the work was done elsewhere.   (*Post, pp.* 685-690.)

6. LIENS.   Statutes.   Construction.

Lien statutes must be liberally construed, to carry out the legislative purpose, and to secure and protect those entitled to a lien.   (*Post, pp.* 685-690.)

7. STATUTES.   Construction.   Meaning of words.   "May."

The word "may" in a statute will not be construed to mean "shall," where such a construction will tend to defeat the object of the statute, though it will be so construed, where such a construction is necessary to effectuate the purpose of the act.   (*Post, pp.* 685-690.)

8. **RAILROADS.**   Foreclosure of liens.   Parties.

Where a contractor under a subcontractor from the principal contractor for the construction of a railroad brought suit to enforce a lien, and alleged an indebtedness from the principal contractor to the subcontractor, and averred that the state of accounts between them on the one hand, and complainant and the subcontractor on the other, was open, the principal contractor was at least a proper party.  (*Post, p.* 690.)

### FROM MADISON.

Error to the Chancery Court of Madison County.— J. W. Ross, Chancellor.

T. W. Pope, for plaintiff.

R. F. Spragins, for defendant.

Mr. Justice Lansden delivered the opinion of the Court.

The original bill was filed by the complainant, Williams, against the Birmingham & Northwestern Railway Company as owner, the Jackson Construction Company, a Tennessee corporation, as principal contractor, and Mrs. Susie E. Wright, administratrix of J. W. Wright, Jr., deceased, as subcontractor, for the purpose of enforcing a claimed lien upon the line of railway of the defendant railway company for approximately $2,000 claimed to be due for work and labor done in the construction of the line of railway belong-

ing to the defendant railway company. The chancellor sustained a demurrer to the bill, from which the complainant has appealed and assigned errors. The defendants the railway company and the construction company have filed the record for writs of error to review those parts of the decree of the chancellor in which he overruled certain other grounds of demurrer assigned to the bill. There were fourteen grounds of demurrer in the court below, only four of which were sustained by the chancellor, and this opinion will be confined to discussion of the questions presented by those grounds.

The bill charged that the defendant railway company "is a railway corporation, with its home office at Jackson, Tennessee, owning and operating a line of railway from Jackson, Tennessee, through the counties of Madison, Crockett and Dyer, which railway company owns its rights of way, tracks, ties, rails tanks, switches, bridges, tunnels, depots, engines, equipments, and franchises"; that the Jackson Construction Company is a Tennessee corporation, with its principal place of business in Jackson, Tennessee, and entered into a contract with the railway company as principal contractor for the construction of its line of railroad; that J. W. Wright, Jr., now deceased, and the intestate of Mrs. Susie E. Wright, entered into a contract with the construction company for the construction and building of the entire line of railway aforesaid; and that the complainant was subcontractor under Wright, in which capacity he did certain work set out in the bill,

and for which Wright is indebted to him in the sum of $2,701.81.

The demurrer raised the question that the bill failed to sufficiently describe the line of railroad upon which the lien is claimed, and, there being no attachment of the property, the lien must fail.

It is not insisted that an attachment is necessary to secure the lien, and could not be under the authority of *Luttrell* v. *Railroad,* 119 Tenn. 492, 105 S. W. 565, 123 Am. St. Rep. 737; but it is said that in the absence of an attachment, under sound rules of pleading, the bill must describe the property upon which it is sought to fix the lien with sufficient definiteness to identify it and segregate it as the property upon which the lien is claimed. This is unquestionably a sound principle. So the question for determination is whether the description is sufficient. The bill was manifestly modeled after the description contained in *Luttrell* v. *Railroad,* supra. In that case it was said:

"The bill is framed in strict conformity with the provisions of sections 2 and 3, chapter 98, of the Acts of 1891. It describes the lines of railroad upon which the lien is sought as leading from Jellico, through the counties of Campbell, Anderson, and Knox, to Knoxville."

The description herein is somewhat more specific than that just quoted, and which the court considered to be in strict conformity with the act of 1891. It is entirely clear that any person reasonably acquainted in the community could identify and locate the line of

railroad upon which the lien is claimed from the description contained in the bill. The bill further shows that the railroad company is the owner of its tracks, ties, etc. Hence this assignment is sustained.

It is next said that the chancery court of Madison county is without jurisdiction to entertain the bill, and declare and enforce the lien which it seeks, for the reason that the bill shows that the work done out of which the lien claim arises was performed in Dyer county, and the bill was not filed either in the county or the district or chancery division in which the work was done. A proper determination of this question makes it necessary to consider chapter 220, Acts of 1883, and chapter 98, Acts of 1891, amendatory thereof. The first act gave a lien to persons contracting with railroads for work and labor done and material furnished in the construction or repairing of the railroad. Section 2 provided that the lien created by the act "may be enforced by a suit against the railroad company in the circuit court of the county or district where the work or some part thereof was done or material of some part thereof was delivered."

Section 3 of the act, while not giving a lien to subcontractors upon the railroad property, provided for a garnishment proceeding in favor of subcontractors and others against the principal contractor in such way as to fix a lien upon funds due the principal contractor from the railroad company in favor of subcontractors and the others. It was provided that this claim "may be enforced against the railroad company

as garnishee, and the principal contractor as debtor in the circuit court, or before any justice of the peace of the county having jurisdiction of the amount claimed''; and section 4 of the act gave a like remedy in favor of laborers, material men, and others employed by subcontractors against the principal contractor, and provided that this remedy ''may be enforced against the principal contractor as garnishee and the subcontractor as debtor in the circuit court or before any justice of the peace of the county having jurisdiction of the amount.'' Section 3 of this statute was amended by chapter 98, Acts of 1891, so as to place subcontractors and others mentioned in section 3 of the act of 1883 on the same basis with respect to their liens as principal contractors. It was provided, however, that notice shall be given to the railroad company within 90 days after the work and labor done, or the materials are furnished or services rendered. It is then provided in section 2 as follows:

''The liens provided for in this act may be enforced by suit brought against such railroad company in the circuit or chancery court of the county or district where the work or material or any part thereof was done or furnished or any part of said services was rendered.''

The question made is that the foregoing section is exclusive of all other remedies, and the lien claimant, in order to secure his lien, must bring his suit against the railroad company in the circuit or chancery court of the county, or district, where the work or material

was done or furnished or the services rendered.  As
previously stated, the work out of which the present
claim arises was done in Dyer county, and Dyer and
Madison counties are not in the same chancery divi-
sion.  The suit was brought, however, in the county in
which the principal office of the railroad company is
situated and in which a part of its line of railway is
located.  Personal service was had on the defendant.

The argument made here to support the ruling of the
learned chancellor is based chiefly upon *Barnes* v.
*Thompson,* 2 Swan, 314, in which it was held that the
mechanic's lien must be enforced by attachment.  The
language of the act of 1846 (chapter 118), under con-
sideration in that case, is that "the lien herein given
may be enforced by attachment, either at law or in
equity."  The court held that the word "may" should
be construed as meaning "shall," and that the require-
ment of the statute was imperative that attachment
should issue and be levied upon the property upon
which the lien was claimed.  It should be observed,
however, that the court stated that before the passage
of this act doubts were entertained, at the bar and on
the bench, both as to the proper form and mode of pro-
ceeding to be resorted to for the enforcement of this
lien.  "These doubts," said the court, "were thrown
out in the case of *Foust* v. *Wilson,* 3 Humph. 33. . . .
We think this section was intended to clear up all
doubts of the remedy."

In addition to expressing the opinion that the act
under consideraton was passed for the express pur-

pose of definitely fixing the practice in such cases, the
court said that the attachment was necessary for the
safety of other creditors and the officer in whose hands
final process may come for execution.

We are cited to many rules of construction found
in standard authorities, all to the effect that when a
new right is given by statute, and a specific remedy
provided, or a new power and also the means of exe-
cuting it are therein granted, the power can be exe-
cuted and the right vindicated in no other way than
that prescribed by the act.   Sutherland on Statutory
Construction, section 399; *Campbellville Lumber Co.*
v. *Hubbert*, 112 Fed., 718, 50 C. C. A. 442; *Union Bank*
v. *Laird*, 15 U. S., 390, 4 L. Ed. 269.   These authorities
are eminent in their respectability, and the rule of
construction stated is undoubtedly sound.   However,
the one fundamental rule to which all others must yield
is that the intention of the lawmaking power must pre-
vail, and in order to ascertain the legislative intent
the whole instrument must be looked to, and a con-
struction given it as a whole which will effectuate the
purpose of the Legislature.   *Brown* v. *Hamlett*, 8 Lea,
735; *Gold* v. *Fite*, 2 Baxt., 248; *Maxey* v. *Powers*, 117
Tenn., 403, 101 S. W. 181.

This court has long since asserted that it was the
intention of the Legislature, in passing this and other
similar lien statutes, to secure to a worthy class of
citizens the benefit of their labor, and accordingly it
has announced that the construction to be given to
those statutes by it is a liberal one, to carry out the

legislative purpose, and to secure and protect those entitled to the lien. *Barnes v. Thompson,* supra; *Alley v. Lanier,* 1 Cold., 541; *Kay v. Smith,* 10 Heisk., 42; *Steger v. Arctic Refrigerator Co.,* 89 Tenn. 453, 14 S. W. 1087, 11 L. R. A. 580; *Ragon v. Howard,* 97 Tenn. 341, 37 S. W. 136.

It was said in the last case cited that it is the policy of our law "to protect and enforce these liens of mechanics and furnishers, and not to allow them to be defeated by any technical niceties of construction."

In other words, the word "may" will not be construed to mean "shall," where such a construction would tend to defeat the objects and purposes of the legislation, although "may" will be construed to mean "shall," if such a construction is necessary to uphold and effectuate the purpose of the act. No reason is suggested by counsel, and none occurs to us, why the Legislature should forbid that a suit of this character should be brought in a county where the principal office of the railroad company is situated and in which a material part of its line of railway is located, although such county may not be the county in which the work and labor was done, or in the chancery district of such county. The more reasonable construction is that the Legislature intended to confer an additional remedy in favor of the lien claimant by authorizing suit to be brought in any county in the district where the work or some part thereof was done. It certainly was not intended to take from the chancery court the jurisdiction which it has had from time immemorial to en-

129 Tenn. 44

force liens upon property where it has jurisdiction both of the subject-matter and of the person. At least, such a construction would not be given the statute unless it appeared to be necessary in order to effectuate its ends, and certainly it will not be done when the construction will tend to defeat its main purposes.

It is next said that the Jackson Construction Company was not a necessary or proper party to this proceeding. The chancellor so held, and dismissed the bill. In this we think there was error. While the complainant contracted with Wright, a subcontractor under the construction company, the bill shows that there is a claimed indebtedness from the construction company to Wright, and that the state of accounts between the principal contractor and the subcontractor upon the one hand, and the complainant and the subcontractor upon the other, are open and unadjudicated. While the principal contractor in such case is perhaps not a necessary party, we think he is a proper party. If the principal contractor should confess by plea or otherwise to no interest in the controversy between his subcontractor and complainant and the railroad company, he would be entitled to be dismissed with his costs; but, from what appears upon the face of the bill, he is a proper party and should not be dismissed upon demurrer.

The result is that the decree of the chancellor is reversed, and the case remanded for further proceedings at the cost of the appellees. Other questions made upon the writ of error were disposed of orally.