THOMAS H. WARREN *et al. v.* COMMERCE UNION BANK*

*(Nashville.  December Term, 1924.)*

1. **EVIDENCE.** Common knowledge that branch banks are exception, and not general rule.

It is a matter of common knowledge that branch banks are the exception, and not the general rule. (*Post, p.* 79.)

Acts cited and construed: Acts 1925, ch. 47; Acts 1913, ch. 20; Acts 1923, ch. 29.

Cases cited and approved: State v. Rickcreek, 167 Ind., 217; State v. Scougal, 3 S. D., 55; Weed v. Bergh, 141 Wis., 569.

Case cited and distinguished: Noble State Bank v. Haskell, 219 U. S., 104.

Code cited and construed: Secs. 3273a, 3273a57 (T.-S.).

2. **BANKS AND BANKING.** Statutes held to prohibit creation of additional branch banks, unless in county where principal office is located; "or"; "county wherein such banking business is carried on."

Acts 1925, chapter 47, section 3, amending Acts 1913, chapter 20, prohibiting the "maintenance or operation of branch banks . . . in any place other than the county in which such banking business is carried on," *held* to prohibit the creation of any additional branch banks, offices, or agencies of any character, unless such branch is located in the county where the principal place of business of the bank is located; the word "or" should be read with the meaning of the word "and" as the phrases are used conjunctively rather than disjunctively, and the words "the county of this State wherein such banking business is carried on" refers to the principal office of the bank. (*Post, pp.* 79, 80.)

3. **STATUTES.** It is a rule for construction that intention of legislature must prevail over literal meaning.

*On power to prohibit or impose conditions upon the right of individuals to engage in banking business, see notes in 5 L. R. A. (N. S.), 874, 25 L. R. A. (N. S.), 1217.

The rule for the construction of statutes to which all others must yield is that the intention of the legislature must prevail over the literal meaning of words or terms found in an act. (*Post, pp.* 80, 81.)

Cases cited and approved: Williams v. Birmingham, etc., Railroad Co., 129 Tenn., 680; Standard Oil Co. v. State, 117 Tenn., 618; Board v. Nashville, 134 Tenn., 612; Solvent Savings, etc., Co. v. Walker, 128 Tenn., 22.

Case cited and distinguished: Coal Creek, etc., Co. v. Tennessee Coal, etc., Co., 106 Tenn., 651.

---

*Headnotes 1. Evidence, 23 C. J., section 1810; 2. Banks and Banking, 7 C. J., section 27; 3. Statutes, 36 Cyc., pp. 1106, 1108.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —Hon. James B. Newman, Judge.

W. E. Norvell, Jr., for appellant.

Baskerville & McGlothin, for appellees.

Mr. Justice Hall delivered the opinion of the Court.

The bill in this cause was filed by Thomas H. Warren, a stockholder in the Commerce Union Bank, located at Nashville, Tenn., R. D. Moore, a resident of Sumner county, Tenn., and president of the Portland Bank, located at Portland, Sumner county, Tenn., and the Portland Bank against the Commerce Union Bank.

Both the Portland Bank and the Commerce Union Bank

are banking corporations organized under the laws of the State of Tennessee.

The bill alleged that the Portland Bank and R. D. Moore, as well as certain other individuals signing the contract as guarantors, had entered into a written contract with defendant bank, a copy of which is attached as an exhibit to the bill; that in said contract it was agreed, among other things, that the Portland Bank would consolidate with defendant bank by conveying its business, good will, property, and assets for the consideration specified in the contract, so that the defendant could open an office at Portland, and continue the form of business of said Portland Bank at its office or branch at Portland, Tenn.; that the condition of the making of said contract was that the business of the Portland Bank should continue as an office or branch of the defendant bank at Portland, and that R. D. Moore should be continued in active, immediate charge of the banking business at Portland, to be carried on by the defendant, as the chairman of its local board of managers.

The bill further alleged that the Portland Bank now carries on, and had only carried on, business at Portland, Tenn.; that the Commerce Union Bank maintains its principal office at Nashville, Davidson county, Tenn., but maintains, and had maintained prior to April 6, 1925, an office at Gallatin, Sumner county, Tenn., and offices in certain other counties of Middle Tennessee, at each of which offices a general banking business was conducted, deposits received, notes discounted, loans made, bills accepted, and checks of depositors honored, paid, etc. In other words, that at the principal office, and at each of said branch offices, the defendant carried on the

same general character of banking business, each of said branch offices being in charge of a local board of managers selected by, and whose action was subject to the approval of, the board of directors of the defendant; that the only difference between the principal office and said branch offices was that the stockholders and board of directors met at the principal office, and at the active chief executive office the president and first vice president were located; that the defendant, under said contract and condition, was to establish and maintain at Portland, not simply a branch bank for the doing of a partial banking business, but an office for the conduct of a general banking business.

The bill further alleged that the General Assembly of 1925, passed chapter 47 of the Public Acts of 1925, which reads as follows:

"An act to amend chapter 20 of the Public Acts of 1913, being entitled 'A general act relating to banks and banking; creating a banking department of the State of Tennessee, and through this department regulating, examining, controlling and supervising banks and banking and liquidation of banks; providing means and agencies for carrying out the provisions hereof; and providing penalties for violation of the act,' so as to prohibit the maintenance or operation of branch banks, offices or agencies, by any corporation, firm or individual carrying on a banking business in any place other than the county in which such banking business is carried on.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that chapter 20 of the Public Acts of the General Assembly of the State of Ten-

nessee of 1913, entitled 'A general act relating to banks and banking; creating a banking department of the State of Tennessee, and through this department regulating, examining, controlling and supervising banks and banking and liquidation of banks; providing means and agencies for carrying out the provisions hereof; and providing penalties for violation of the act,' be amended as follows:

''Sec. 2.  Be it further enacted, that this act shall not apply to branch banks, offices or agencies now maintained and operated by any corporation, firm or individual doing or carrying on a banking business in the State of Tennessee in places other than the county of this State wherein such banking business is carried on.

''Sec. 3.  Be it further enacted, that no corporation, firm or individual now or hereafter doing or carrying on a banking business in the State of Tennessee shall have, maintain, create or operate any branch bank, office or agency, for the purpose of receiving deposits, paying checks, making loans or receiving or discounting bills or notes in any place whatsoever other than the county of this State wherein such banking business is carried on.

''Sec. 4.  Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it.

''Passed April 6, 1925.

''L. D. HILL,
''Speaker of the Senate.
''W. F. BARRY,

"Speaker of the House of Representatives.

"Approved April 6, 1925.

"AUSTIN PEAY, GOVERNOR."

The bill further alleges that, while the meaning of the above act is somewhat ambiguous, it quite probably prohibited the establishment of any further offices by defendant, even for the conduct of a general banking business, other than in the county where the principal office was located, and that, if this be true, the said contract and condition upon which same were made were illegal and invalid.

The complainant Thomas H. Warren alleged that he was advised that if the defendant should open and maintain an office for the conduct of a general banking business at Portland, and consolidate the Portland Bank with it, if said act should be given the above construction and meaning, the defendant bank would be violating the law, and would subject itself to the penalty of forfeiture of its charter, as well as to other penalties, to the serious injury of his property rights as a stockholder in defendant bank.

The bill further alleged that the defendant bank insisted that said contract be carried out, and stated that it intended to open said branch office at Portland.

The bill is filed under the Declaratory Judgment Statute of 1923 (Acts 1923, chapter 29) and prays that the court determine and declare the rights of the parties, and that, if so advised, the court declare the contract, and the condition upon which same was made, invalid because of the fact that the true construction of chapter 47 of the Public Acts of 1925 prohibited the defendant from open-

ing and maintaining an office at Portland, Tenn., for the conduct of a general banking business.

The defendant, Commerce Union Bank, demurred to the bill upon the following grounds:

"(1) That the contract and condition referred to are legal and valid because chapter 47 of the Public Acts of 1925 does not prohibit a bank from thereafter starting and conducting a general banking business in any county in Tennessee other than in a county or counties wherein it has theretofore carried on a banking business, but simply prohibits a bank from thereafter creating and maintaining any branch office or agency in some other county for the purpose of doing a partial banking business such as for the purpose of receiving deposits or paying checks or making loans or receiving or discounting bills or notes.

"(2) That the contract and condition referred to are legal and valid because chapter 47 of the Public Acts of 1925 does not prohibit the defendant, which already on April 6, 1925, and prior thereto, and has ever since, carried on a general banking business at Gallatin, Tenn., from opening and maintaining another office for the same character of banking business at Portland, Sumner county, Tenn.

"(3) That said chapter 47 of the Acts of 1925 does not mention the principal office of a banking corporation, nor refer to the county where same is maintained, but simply prohibits any bank from opening an office or branch or agency for a partial banking business in a county other than in a county where it already prior thereto conducted a banking business at some place therein.

"(4) That said chapter 47 of the Acts of 1925 does not mention the principal office of a banking corporation, nor refer to the county where same is maintained, but only, at the most, prohibits any bank from opening an office or agency for either the conduct of a partial or general banking business in a county other than in a county where it already prior thereto maintained and conducted a general banking business at some place therein.

"(5) The act is so vague and indefinite that its true meaning cannot be legally ascertained and it cannot be intelligently administered nor enforced."

The cause was finally heard upon the bill and demurrer by the chancellor, who held that said statute prohibited the maintenance and operation of any character of branch bank, office, or agency except in a county where the bank had its principal office, except as to branch banks, etc., established, maintained, and operated before the passage of said act, and that, even though the defendant had a branch office at Gallatin, Sumner county, Tenn., prior to the passage of the act, it could not legally establish, maintain, and operate an office or branch bank at Portland, Sumner county, Tenn.

The chancellor, therefore, overruled defendant's demurrer, to which action of the chancellor it excepted, and prayed an appeal to this court, which appeal was granted and perfected, and defendant has assigned errors.

Defendant, through its first assignment of error, insists that the chancellor erred in not holding that chapter 47 of the Public Acts of 1925 simply prohibited a bank from thereafter creating and maintaining any branch, office, or agency in a county other than the county

in which it had theretofore carried on a banking business, for the purpose of doing a partial banking business, such as for the purpose of receiving deposits, paying checks, making loans, or receiving or discounting bills and notes, and did not prohibit a bank from thereafter establishing and conducting a general banking business in any county in the State of Tennessee.

Through its second assignment of error defendant insists that the chancellor erred in holding that said act prohibited the defendant, which already on April 6, 1925, and prior thereto, carried on a general banking business at Gallatin, Sumner county, Tenn., from opening and maintaining another office for the same character of banking business at Portland, Sumner county, Tenn.

Through its third assignment of error defendant insists that the chancellor erred in reading into said act the words "principal office," and in holding:

(a) That the act prohibited any bank from opening an office or branch or agency for doing a partial banking business in any county where it already, prior to the passage of the act, conducted a banking business at some place therein.

(b) That the act prohibited any bank from opening an office or agency for the conduct of a general banking business in a county where it already, prior to the passage of the act, maintained and conducted a general banking business at some place therein.

Through its fourth assignment of error defendant insists that the chancellor erred in not holding that the act was so vague and indefinite that its true meaning could not be legally ascertained, and that it could not be intelligently administered nor enforced.

Prior to the passage of chapter 47 of the Public Acts of 1925, the superintendent of banks in this State had the authority to permit banks to open offices at other places in the same county where the principal office was located, and also in counties other than where the principal office was located. There is nothing in the statutory form of bank charters, and bank and trust company charters, limiting their transactions of business to one office any more than does the form of charters of mercantile, mining, and manufacturing corporations, etc.

Chapter 20 of the Public Acts of 1913, known as the "Banking Act," and which is codified as sections 3273a et seq. of Thompson-Shannon's Code, which regulates banks, contains nothing which prohibits the maintenance of branches, and the consolidation and merger of banks is inferentially authorized by section 3273a57, of said Code, which requires the approval of the superintendent of banks before there shall be any consolidation or merger.

Chapter 47 of the Acts of 1925, in section 2, expressly provides that said act shall not apply to branch banks, offices, or agencies established, maintained, and operated by any corporation, firm, or individual doing or carrying on a banking business in the State of Tennessee in places other than the county of this State wherein such banking business is carried on.

Section 3 of said act, however, provides:

"That no corporation, firm or individual now or hereafter doing or carrying on a banking business in the State of Tennessee shall have, maintain, create or operate any branch bank, office or agency, for the purpose of receiving deposits, paying checks, making loans or re-

ceiving or discounting bills or notes in any place whatsoever other than the county of this State wherein such banking business is carried on.''

In *State* v. *Rickcreek,* 167 Ind., 217, 77 N. E., 1085, 5 L. R. A. (N. S.), 874, it was held that the State could regulate private banking.

To the same effect is the holding of the court in *State* v. *Scougal,* 3 S. D., 55, 51 N. W., 858, 15 L. R. A., 477, 47 Am. St. Rep., 756. It was held, however, in that case that, while the State had the right to regulate, this regulation must stop short of prohibition.

In *Weed* v. *Bergh,* 141 Wis., 569, 124 N. W., 664, 25 L. R. A. (N. S.), 1217, it was held that an act was valid which required, among other things, that all bankers should incorporate after the passage of the statute. The court held that many police regulations had the effect of prohibiting a business unless certain conditions were complied with, and that this condition could be the requirement of incorporation. The court declined to follow the South Dakota case of *State* v. *Scougal,* supra, on the ground that in the South Dakota Constitution there was a classification provision prohibiting the granting of privileges or immunities to any citizen, class of citizens, or corporations which, on the same terms, shall not equally belong to all citizens or corporations.

In *Noble State Bank* v. *Haskell,* 219 U. S., 104, 31 S. Ct., 186, 55 L. Ed., 112, 32 L. R. A. (N. S.), 1062, Ann. Cas., 1912A, 487, it was held that a State could lawfully regulate the business of banking by requiring incorporation and contribution toward a state bank guaranty fund. In that case the court said:

"We cannot say that the public interests to which we have adverted, and others, are not sufficient to warrant the State in taking the whole business of banking under its control. On the contrary, we are of opinion that it may go on from regulation to prohibition except upon such conditions as it may prescribe."

We will now proceed to determine just what construction should be given section 3 of chapter 47 of the Acts of 1925. There is no question made as to the meaning of section 2 of said act. This section expressly and clearly provides that said act shall not apply to branch banks, offices, or agencies established and being maintained and operated at the time of its passage. It is insisted, however, by the defendant that section 3 of said act only prohibits the establishment and maintenance of branches which do a partial banking business; its contention being that this construction must result from the use of the disjunctive "or" appearing in said section.

We do not think this contention is well taken. The title of the act unmistakably shows that its purpose was:

To "prohibit the maintenance or operation of branch banks, offices or agencies, by any corporation, firm or individual carrying on a banking business in any place other than the county in which such banking business is carried on."

Considering the general purpose of the act, as expressly stated in its title, the court is of the opinion that the word "or" should be read with the meaning of the word "and;" it being clearly apparent that the phrases were used in their conjunctive rather than their disjunctive sense. The purpose of the act, therefore, was not to prohibit branch banks that did only a partial business,

but to prohibit the establishment of any further branch banks of any character. The prohibitory language of the act, as contained in section 3, is:

"That no corporation, firm or individual now or here·after doing or carrying on a banking business in the State of Tennessee shall have, maintain, create or oper·ate any branch bank, office or agency, for the purpose of receiving deposits, paying checks, making loans or receiving or discounting bills or notes in any place whatsoever other than the county of this State wherein such banking business is carried on."

We think the above language is clear and unambiguous, and expressly prohibits the creation of "any branch bank, office or agency" even though such branch does a banking business in any place whatsoever "other than the county of this State wherein such banking business is carried on." The words "the county of this State wherein such banking business is carried on" unquestionably refer to the principal office of the Bank. `It contemplates the limitation of branch banks to one county only; that county being the one where the bank is carrying on its business. It is a matter of common knowledge that branch banks are the exception, and not the general rule, and the above language of section 3, in so far as those exceptional institutions, which maintain branches are concerned, will be considered by the court to refer to the principal office of such institution.

The clear purpose of the act was to prevent the creation of any additional branches after the passage of the act, unless such branch is located in the county where the principal place of business of the bank is located. Upon

no other construction could the act accomplish its purpose or remedy the evil sought to be remedied.

The only exemption or exception which the legislature sought to make in the operation of the act was as to those branch banks already in existence at the time of the passage of the act, and this was accomplished by section 2 of said act.

It is manifest that chapter 47 of the Acts of 1925 was intended to prohibit large banks, such as defendant bank, which now maintains and operates branch banks in several counties of middle Tennessee, from establishing, on a large scale, branches, and thereby tending to create a monopoly of the banking business and eliminate and destroy small, independent banking institutions.

The defendant insists that the language of section 3 of said act is ambiguous and uncertain.

It is true that the language of section 3 is rather general, and could have been made more specific; but it must be remembered that the act was drafted in the light of existing circumstances, and that, perhaps, 95 per cent. of the banks in Tennessee have only one place of business, which is the principal office at which they are engaged in a general banking business, and that the defendant constitutes the exception. The court will therefore construe the general language of the statute to refer to the county in which the defendant maintains its principal office.

The rule for the construction of statutes, to which all others must yield, is that the intention of the legislature must prevail. *Williams* v. *Birmingham, etc., Railroad Co.,* 129 Tenn., 680, 168 S. W., 160.

The rule is well established that the legislative intent will prevail over the literal meaning of the words or

terms found in an act. *Standard Oil Co.* v. *State,* 117 Tenn., 618, 100 S. W., 705, 10 L. R. A. (N. S.), 1015; *Board* v. *Nashville,* 134 Tenn., 612, 185 S. W., 694; *Solvent Savings, etc., Co.* v. *Walker,* 128 Tenn., 22, 157 S. W., 66.

In *Coal Creek, etc., Co.* v. *Tennessee Coal, etc., Co.,* 106 Tenn., 651, 62 S. W., 162, it was said: ''When the intent of a statute is clear, general words will be restrained to that intent, and words of narrower import will be expanded to embrace and effectuate that intent. Words may be modified, altered, or supplied so as to obviate repugnancy to or inconsistency with such intent.''

We find no error in the decree of the chancellor, and it is affirmed, with costs.