## J. O. PIERCE v. JOHN LAWRENCE et al.

ATTORNEY. *Lien on land. Rights of third parties.* The declaration of a lawyer's lien on land, by the court in which the services were rendered, although binding on the parties and those claiming under them pending the litigation, will not affect the rights of a third person having a prior lien.

### FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDowell, Ch.

H. F. DIX and HENRY CRAFT for complainant.

HUMES & POSTON for defendants.

COOPER, J., delivered the opinion of the court.

Bill to enforce an alleged lawyer's lien on land for professional services. The chancellor sustained the bill as to the only fee now in controversy. Upon the appeal of the defendants, Lawrence and wife, the

Referees recommend a reversal of the decree, and a dismissal of the bill.

On April 15, 1866, J. M. Tomeney conveyed to his wife, Fannie A. Tomeney, by deed duly proved and registered, the land on which the lien is claimed. On January 16, 1871, Tomeney and wife conveyed this land in trust to secure a debt due to the defendant, Jane Lawrence, for $10,000, borrowed money, which was proved and registered at the time, but the certificate of the privy examination was fatally defective. The officer, who took the probate, afterward, in the latter part of the year 1874, corrected the certificate, under the statute, so as to make it valid in law, as held by this court in *Brinkley* v. *Tomeney*, 9 Baxt., 275. The deed seems not to have been re-registered after the correction. Upon a cross-bill filed in that case by Lawrence and wife, Jane, the trust deed was foreclosed, and the property bought by Jane Lawrence at a price which satisfied about half, or less than half, of her debt, the sale being confirmed and title vested accordingly. The present bill impounds so much of the purchase money at this sale as may be necessary to pay the complainant's claim upon the land, for professional compensation.

In April, 1871, the Memphis & Ohio Railroad Company filed a bill against J. M. Tomeney to charge him with certain bonds of the company or their value. In October, 1871, the company filed an amended bill against Tomeney and wife, attacking the conveyance of the land in question to the wife as voluntary and fraudulent, and seeking to subject it to the satisfaction

of any recovery they might obtain against the husband. In January, 1871, by letter written on the 10th of that month and received in February, Fannie A. Tomeney employed the complainant, Pierce, to defend this suit for her, which he did to a successful termination, on February 12, 1878. The bills of the railroad company had been filed in the chancery court at Memphis, but had been removed by the defendants to the Circuit Court of the United States at that place. In the final decree of that court dismissing the bill as to Fannie A. Tomeney and her land, upon motion of the complainant, a lien was declared on the decree in his favor against the land for reasonable professional services in defending the suit. The present bill was filed July 30, 1878, to enforce that lien. The defendants, Lawrence and wife, were not parties to the railroad suit. At the time the complainant was retained in that suit by Fannie A. Tomeney to defend for her, he had no actual notice of the trust conveyance of Tomeney and wife to secure the debt of Jane Lawrence for borrowed money, and did not see the deed until the certificate had been corrected, in the latter part of 1874, but he became aware of its existence, and that Tomeney and wife admitted its validity, about October, 1872. His contention is that the declaration of the lien in his favor by the final decree in the railroad case related back to the date of his retainer, or the commencement of his services for her in the cause, and gave him a right to satisfaction for his reasonable compensation for professional services superior to the lien of the defendant, Jane

Pierce *v.* Lawrence.

Lawrence, under her trust deed, until the certificate of probate thereof was amended, or, at any rate, until he had actual notice of the existence of the deed.

The lawyer's lien on land was first recognized by this court in *Hunt* v. *McClanahan*, 1 Heis., 503. The bill in that case was filed to perfect and maintain the title to a tract of land bought from the defendants by the complainant, and threatened with an execution under a fraudulent judgment. Upon the petition of the counsel of the complainant, this court declared a lien in their favor on the land for their reasonable compensation for professional services in successfully prosecuting the suit. The equity of the attorney was said to grow out of the transaction, and the court said: "We hold that an attorney is entitled to an equitable lien on the property or thing in litigation for his just and reasonable fees, and that the client can not, while the suit is pending, so dispose of the subject-matter in suit as to deprive the attorney of his lien, nor afterward to any purchaser with notice. The pendency of the suit is of itself notice to all persons, and the lien may be preserved and the notice extended by stating its existence in the judgment or decree."

The generality of the language thus used seemed to imply that the lien existed in favor of counsel, whether retained by the plaintiff or the defendant, and to give a lien on the land in controversy to the lawyer of the successful party. In consequence of this construction the practice of the courts was for a time very liberal, and the lien was declared in

favor of the counsel of the defendant as well as of the plaintiff. Upon further consideration, it was seen that this extension of the doctrine could not be sustained upon the principles of the original decision, nor upon general principles. It operated as a restraint upon the free disposition of property, and created a new and secret trust, not only unknown to the common law, but not warranted by its principles, and in conflict with the policy of our registration laws. It was therefore held by this court that the lien exists only in the case of the actual recovery of land by a suit instituted for the purpose, just as at common law the lien was on the money judgment recovered. The lien, it was said, is declared to exist from the commencement of the suit, manifestly contemplating a suit for the specific property, and the doctrine, although an extension of the principle of the common law, may be sustained upon the ground that the *lis pendens* is notice to all the world of the plaintiff's right, and no great harm can result from carving out of this right a lien in favor of the attorney, running *pari passu* with the lien of the *lis pendens*. But the *lis pendens* is no notice to any one of the defendant's rights, which stand precisely as if no suit were pending, and consequently a lien on that right, without contract, would be without any rule or analogy to support it, besides being in conflict with the policy of our registration laws: *Garner* v. *Garner*, 1 Lea, 29; *Sharp* v. *Fields*, 5 Lea, 326. And if the suit is not for specific land, or does not impound the property in litigation by some process

which places it within the custody of the court, there can be no lien, even for the plaintiff's counsel: *Sharpe* v. *Allen*, 11 Lea, 518. And see *Brown* v. *Bigley*, 3 Tenn. Ch., 618.

In view of these principles and adjudications, it is clear that the complainant did not acquire any lien on the land in controversy by his retainer and services as a lawyer in defending the suit of the Memphis & Ohio Railroad Company against Fannie A. Tomeney, and that the court was in error in declaring the existence in his favor of such a lien. It is contended, however, that although the declaration may have been erroneous, yet it is binding upon the parties as *res adjudicata*. The original decision of this court in *Hunt* v. *McClanahan*, it will be noticed, is expressly put upon the ground that the lawyer's lien grows out of the transaction, and is created by the *lis pendens* of the suit, and is only "preserved and the notice extended by stating its existence in the judgment or decree." In other words the lien is not the result of the declaration by the court as an adjudication, but of the actual services in the particular case, which services give the lien, and the declaration of the court, by stating its existence, only extends the notice of the lien beyond the *lis pendens*. In my opinion this is the only ground upon which the declaration can stand. It is not, I think, an adjudication of rights, for the obvious reason that there are no parties before the court to give jurisdiction of the matter declared. For, as a litigation, the proceeding can only be considered, between the law-

37—VOL. 16.

yer and his client, as begun by the motion of the
lawyer, and of which the client has no notice. The
client is in court for the purposes of the original
litigation, in which the lawyer represents him. He
is not in court for a new litigation in which, as this
court has held, he is entitled to notice, and the lawyer
is his antagonist: *Perkins* v. *Perkins*, 9 Heis., 55.
And I have always thought it to be a fundamental
principle of our jurisprudence that a judicial proceed-
ing against a party without notice is simply void,
unless expressly authorized by statute. And when
thus authorized, the summary judgment must show
upon its face all the facts necessary to give the court
jurisdiction, and make a valid judgment. If, in this
particular case, the judgment has recited the facts, or
if, in the absence of such recital, the court looks to
the record of the original case for the facts, the
declaration of the lien, treated as an adjudication,
would be simply void.

I am of opinion, therefore, that the complaniant
is not entitled to any lien on the land in controversy
by reason of the declaration thereof by the court in
the final decree in the railroad case. But my brother
judges, over my dissent, have come to a different
conclusion on a similar declaration in the case of
*Winchester* v. *Heiskell*, 16 Lea, 556. That decision
is conclusive upon this case, and the complainant
must be held to have acquired a lien on the land
from the date of his retainer, as between him and
Fannie A. Tomeney.

The conveyance of Tomeney and wife in trust to

secure the debt of the defendant, Jane Lawrence, was made in January, 1871, and therefore antedates the complainant's retainer and lien. It was duly and legally probated, but the certificate of the officer, who took the wife's privy examination, was defective, so that the registration was not good as against creditors, and subsequent *bona fide* purchasers for a valuable consideration without notice: *Luter* v. *McRee,* 2 Leg. Rep., 61. But the equity of the beneficiary in the trust deed, if eventually perfected by the correction of the certificate, would prevail over a subsequent sale in satisfaction of a pre-existing debt with notice of the equity, and *a fortiori*, of a subsequent lien created to secure such a debt with like notice: *Grotenkemper* v. *Carver,* 9 Lea, 280; *Jarman* v. *Farley,* 7 Lea, 141. The complainant's lien was created by the decree in 1878, to secure a debt then existing for his professional services, at which time the trust deed had been perfected by the corrected probate in 1874, he having notice thereof. The trust deed, under these circumstances, even if never registered under the corrected certificate of probate, would have priority over the complainant's lien, considered as created at the date of the decree declaring it: *Kirkpatrick* v. *Ward,* 5 Lea, 434.

The decree, although *res adjudicata* between the parties, would not prevent the defendant, Lawrence, from showing, in a litigation between her and the complainant, that he had no lien on the land before the date of the decree. A judgment or decree is binding on the parties, but not on strangers: *Duchess*

*of Kingston's Case,* 20 How. St. Tr., 355; 2 Smith's Lead. Cas., 609; *Simpson* v. *Jones,* 2 Sneed, 36; *Boles* v. *Smith.* 5 Sneed, 105; *Haynes* v. *Gates,* 2 Head, 598; *Campbell* v. *Hall,* 16 N. Y., 575; *Montgomery* v. *Rich,* 3 Tenn. Ch., 660. The defendant had the right, therefore, to contest with the complainant, notwithstanding the decree relied on by him, those matters involved in the previous litigation which bear upon her rights, just as if no such decree had been rendered. She may show, therefore, as she has, that the complainant had no lien on the land before he received notice of her equity under the trust deed.

The lien declared by the circuit court of the United States was no doubt given in conformity with, and under the State law as settled by the decisions, and must depend for its validity on that law. It is not pretended that there is any statute of the United States, or practice of the federal courts on the subject.

The chancellor's decree, in accordance with the report of the Referees, will be reversed, and the bill dismissed with costs.