STATE *ex rel.* THOMAS *v.* JAMES C. DAVIS.

(*Knoxville*. September Term, 1929.)

Opinion filed November 16, 1929.

CHAS. H. BROWN and EVERETT M. SMITH, for complainant, appellant.

THURMAN AILOR, for defendant, appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The question presented is whether or not an act is unconstitutional which fixes the time of election of a county superintendent of education by popular vote at a date other than the regular August election. The bill was filed by Thomas seeking a mandamus to compel the incumbent, Davis, to deliver to him the books and records of the office, complainant showing his election at the preceding *November* election held on that date pur-

suant to a provision in Chapter 243, Private Acts of 1927. A demurrer challenging the constitutionality of this act was sustained by the Chancellor as in conflict with Section 5, Article 7, the pertinent language of which is as follows:

"Elections for judicial and other civil officers shall be held on the first Thursday in August (1870), and forever thereafter on the first Thursday in August next preceding the expiration of their respective terms of office."

"Judicial and other civil officers" includes all officers required by law to be elected by popular vote. We are unable to except county superintendents of education on the theory either that they are not "civil" officers, or that they are not constitutional officers. It seems to us to be immaterial whether they are of the latter class, and they come within the general term "civil officers."

All governmental officers are civil officers, unless military. The term occurs in Article 2, Section 4 of the Federal Constitution, which provides for the removal from office upon impeachment of the President, Vice President, and *civil officers* of the United States. Citing Rawle and Story the term is thus defined by Baldwin's Bouvier: "Any officer of the United States who holds his appointment under the National Government, whether his duties are executive or judicial, in the highest or the lowest departments of the Government, with the exception of the officers of the Army and Navy."

However, the term civil is used not only in contra-distinction to military, or to ecclesiastical, but to barbarous or savage, indicating a state of society reduced to order and regular government, thus, civil life, civil society, civil government, civil liberty. It is also used in refer-

ring to those rights, remedies and affairs which are public and relate to the government, rather than private. It is probably in this sense that the term is used in section 5, being the equivalent of the term "public."

Even should it be conceded, as contended, that a county superintendent is an "administrative officer," he would still be a "civil" officer under this section of the Constitution.

Nor is the question of the time of the holding of elections of such officers controlled ·by Article 7, Section 4, which provides that—"The election of all officers, and the filling of all vacancies not otherwise directed or provided by the constitution shall be made in such manner as the Legislature shall direct."

This section relates to the *manner* rather than to the *time* of the election, a matter or detail expressly "directed or provided" for elsewhere, in comprehensive language, to-wit, in Section 5, *supra,* with respect to all cases of elections by popular vote.

Of course, elections by the County Courts, or by the Legislature itself, are not embraced, and, consistently, provision commonly is and may constitutionally be made for elections at other times, when the people do not elect. The determinative question is not as to the character of the officer, but the method provided for his election.

That the view indicated is according to the intent of the framers of the constitutional section under consideration, may be fairly inferred from its history, in that, the corresponding section in the Constitution of 1834 was of like import in its essentials, providing for one common day for the holding of elections of county and other officers by the people, so as to avoid multiplicity and uncertainty, and against the holding of such elections

on the same day fixed for general elections for Congress, the General Assembly and Governor. The section written into the Constitution of 1870 accomplishes all of this by naming the day, and seems equally to embrace all elections of county officers by the people.

While the question here presented appears not to have been heretofore directly passed on by this Court, Chapter 218 of Acts of 1899, providing, as construed by the Court of Chancery Appeals, for elections in the month of May of school commissioners in certain school districts of the State, was held by that Court to be in violation of Section 5 of Article 7. On appeal to this Court this question was not passed on, the case being disposed of on other grounds. See State ex rel. v. Banks, 106 Tenn., 394. However, a review of that decision and of our other decisions fails to disclose any expressions contrary to the views herein announced, and in opinions of this Court defining who are officers within the purview of Sections 17, Article 11, and 4, Article 7, those of the class before us are incidentally so recognized, and the power to fill vacancies in such offices is uniformly limited to the "next general election." Thus by clear implication such officers are brought within the operation of Section 5 fixing the time for the holding of such general elections. See Grindstaff v. Carter County, 152 Tenn., at page 612, and Davis v. Williams, 158 Tenn., 34. The reasoning of these opinions as to who are officers and the application of the sections before the Court limiting the manner of their election, has application here when the section fixing the time of the election by the people is under consideration.

■ While the jurisdiction of the Chancery Court to entertain this suit was challenged below on the ground

that it was an election contest, we think the allegations of the bill bring the case within the rule announced in *State ex rel.* v. *Grindstaff,* 144 Tenn., 554, wherein Mr. Justice GREEN said: "A mandamus suit, however, may incidentally involve the determination of an election contest, and the·Chancery Court has jurisdiction in a suit like this." And see *Peerless Const. Co.* v. *Bass,* 158 Tenn., at page 523, wherein this exception to the general rule is approved, citing the *Grindstaff case* and *Adcock* v. *Houk,* 122 Tenn., 278.

The decree of the chancellor dismissing the bill is affirmed.