CAGLE, FOR USE OF CAGLE, *v*. BENTON COUNTY *et al.*

(*Jackson*, April Term, 1944.)

Opinion filed May 6, 1944.

A. BRADLEY FRAZIER, of Camden, for plaintiff in error.

S. L. PEELER, of Camden, for defendant in error.

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff W. C. Cagle brought suit on August 28, 1941, against Benton County and the Highway Commission of said county for the use and benefit of Mrs. W. C. Cagle on an account for $289.07 for services alleged to have been rendered the county and highway commission during the months of April and May, 1939. The account for his services was transferred to Mrs. Cagle. The defendant Benton County filed two pleas, (1) of the general issue, that it was not indebted to the plaintiff, and (2) a special plea that the contract of employment of W. C. Cagle was illegal, since he was an acting justice of the peace and a member of the Quarterly County Court of Benton County at the time of his alleged employment and service, and that he had forfeited all pay and compensation for said alleged services under Sections 1874 and 1875 of the Code of Tennessee. The Highway Commission filed a plea to the effect that it was a creature of the Quarterly County Court under Section 3278 *et seq.*, of the Code; that it had only such powers as vested in it

under the Code, and that being a mere agency of the Quarterly County Court, it could not sue or be sued. The trial judge, hearing the case without the intervention of a jury, found in favor of the defendants and entered a judgment dismissing plaintiff's suit. The plaintiff was granted an appeal to the Court of Appeals and that Court reversed the judgment of the lower court, holding that sections 1874 and 1875 of the Code had no application. A judgment was entered in favor of the plaintiff. The defendants thereupon filed their petition for *certiorari*, which was granted, and the case heard on the record.

There are five assignments of error, all of which raise but one question, "that the Court of Appeals erred in holding that the account sued upon was not forfeited under Sections 1874 and 1875 of the Code." It is further insisted by the defendants that the Court was in error in holding that "Mr. Cagle's contract to serve as supervisor was not a contract in which Benton County was interested." The only evidence in the record as to the contract in question is found in the deposition of W. C. Cagle. The substance of it is fairly stated in the petition for *certiorari*, as follows:

"The evidence consisted of the deposition of W. C. Cagle (Tr. pp. 9-18), who admitted that he was a justice of the peace for Benton County prior to and at the time he made the contract to serve as road supervisor; that he, after talking to Mr. J. W. Lashlee relative to the matter, circulated a resolution among the justices of the peace of Benton County to create a Highway Commission for said County and to elect Mr. J. W. Lashlee as Commissioner; that he got a majority of said justices to sign the same and pledge themselves to vote for its passage; and that he then introduced said resolution

and, after its adoption by the Quarterly County Court, called Mr. Lashlee, who was in Nashville, and made a contract under which he (Cagle) was to be road supervisor at a salary of $100.00 per month. Said resolution is a part of the record.

"A portion of the record in the case of *H. H. Wismer et al.* v. *J. C. Herrin et al.*, is made a part of the record in this case, but it is the insistence of the petitioner, Benton County, that the same is wholly immaterial, since Benton County was not a party to said case and the action of the Courts in that case could not affect the rights of the County in this case.

"It was stipulated that both J. C. Herrin, County Judge, and his successor A. Odle, County Judge, had declined to pay the account sued upon."

Sections 1874 and 1875 of the Code provide:

"1874. Public officers not to be interested in public contracts.—It shall not be lawful for any officer, committeeman, director, or other person whose duty it is to vote for, let out, overlook, or in any manner to superintend, any work or any contract in which any municipal corporation, county, or the state, shall or may be interested, to be directly or indirectly interested in any such contract."

"1875. Forfeiture of all payment and compensation.— Should any person, acting as such officer, committeeman, director, or other person above referred to, be or become directly or indirectly interested in any such contract, he shall forfeit all pay and compensation therefor."

The question now before us was considered by this Court in *Madison County* v. *Alexander*, 116 Tenn., 685, 94 S. W., 604, and again in *State ex rel.* v. *Groce*, 152 Tenn., 566, 280 S. W., 27. In the *Alexander Case* it was held

that a justice of the peace could not recover for supplies sold by him to the Superintendent of the County Workhouse, "that a sale to the workhouse department and superintendent was really, and in fact and law, a sale to the county." Also: Page 687 of 116 Tenn., page 604 of 94 S. W.:

"The money to pay for these supplies must, as a matter of course, be furnished ultimately by appropriations by the county court. It is one of the duties of each member of the county court to pass upon these appropriations, either directly or indirectly.

"In *Hope* v. *Hamilton County*, 101 Tenn. [325], 331, 47 S. W., 487, construing the statutes quoted, this court said: 'It is the policy of the law to prohibit members of the county court from making contracts with their own members (meaning the county court), for any purpose which calls for compensation out of the county treasury.' "

In *State ex rel.* v. *Groce*, *supra* [152 Tenn., 566, 280 S. W., 28], opinion by Mr. Justice McKINNEY, it was held that a justice of the peace who made a contract with the County Board of Education to teach a county school was not a "contract with the county" within the spirit and intent of the statutes invoked. The Court made this further observation at page 570 of 152 Tenn., at page 28 of 280 S. W.:

"The county board of education is a separate and distinct entity from that of the county court, created by the State, with well defined powers and duties, over which the county court has no supervisory jurisdiction. Hence the county court had nothing to do with the letting of this contract, or the manner of its performance, and the relator, as a member of the county court, did not contract with himself."

240

█ We think the facts disclosed in the record in this case show that the Highway Commission was not a distinct entity of the County Court of Benton County, and that the contract of the plaintiff was in reality made with the county, and that it violates both the spirit and intent of the statute. The County Highway Commission of Benton County was created under Chapter 54, Acts of 1929, and found in Section 3278 *et seq.*, of the Code. Pursuant to the provisions of this statute, the County Highway Commission is authorized and empowered to employ a supervisor . . . who shall serve at the will of said commission at a salary not to exceed $150.00 per month. Section 3280.5 of the Code further provides that ''The quarterly county courts of the counties, etc., . . . are hereby authorized to pay said county highway commissions a reasonable amount for their services, the payment to be made from the public road funds of the counties, . . . by warrant to the trustee of the county, which shall be signed by the chairman of said highway commission and by the County Judge or chairman.'' Under said act all contracts for any purchase by the commission in excess of five hundred dollars *''shall not be binding upon the counties until approved by the Quarterly County Court.''* (Italics ours.)

██ It thus appears that the instant case is easily distinguishable from *State ex rel.* v. *Groce, supra.* The payment of salaries to the Commission, as well as the expenses thereof, is under the authority of the Quarterly County Court. Every warrant drawn must be countersigned by the Judge or Chairman of the County Court. Every contract for an item purchased in excess of five hundred dollars must be approved by the Quarterly County Court before such a purchase is binding on the county.

The plaintiff was an active member of the Quarterly County Court. The duty devolved upon him (1) to elect a County Highway Commission, (2) to fix a reasonable amount as compensation for their services, (3) to approve or disapprove of purchases made by the Commission when in excess of five hundred dollars, and (4) his salary was paid out of county road funds, all of which was under the control of the Quarterly Court. While it may be true, as stated in the Court of Appeals' opinion, that the Highway Commission is supported by the two cent gas tax, such tax is nevertheless county funds. The learned Court of Appeals was influenced in its opinion by the case of *Wismer* v. *Herrin,* which was a taxpayers' suit and involved compensation to W. C. Cagle for his services. *Certiorari* was denied by this Court and therefore any opinion expressed by the Court as to the merits of that case was pure *dictum.* It certainly would not be binding upon Benton County, since the county was not a party to that cause.

We are therefore constrained to hold that the defendant Benton County had a direct interest in the contract in question and that said contract violates both the spirit and the clear purpose of the statute. It results that the judgment of the Court of Appeals is reversed and that of the Circuit Court is affirmed.