SOUTHERN *v.* BEELER, ATTY. GEN. *et al.*

*(Knoxville,* September Term, 1945.)

Opinion filed June 1, 1946.

On Petition to Rehear June 29, 1946.

278

SOUTHERN & SOUTHERN and JOEL H. ANDERSON, all of Knoxville, for complainants.

JAMES W. K. JOHNSON and JOHNSON & JOHNSON, all of Knoxville, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainant filed his original injunction bill in the chancery court, as a citizen and taxpayer of Knox County, against Roy H. Beeler, Attorney General of Tennessee, Knox County, James W. Elmore, Jr., County Judge of said county, Jack Dance, county court clerk, Lum Reeder, Jr., trustee, and L. H. Brickey, Superintendent of Public Instruction, and also against the members of the Board of Education of Knox County, naming them. The complainant sued for himself and all others in like circumstances who live and own taxable property within the corporate limits of the City of Knoxville. The attorney general of the state was made a party defendant because the bill challenges the constitutionality of certain statutes. The bill also challenges the validity of

certain appropriations made by the county court, and seeks an injunction restraining the payment thereof.

All defendants in due course filed answers and the case was decided by the chancellor upon the technical record. It is true that certain witnesses were called and testified on behalf of the defendants, but their evidence was of little or no probative value as to the merits of the issues involved.

The questions presented on this appeal involve the constitutionality of certain private acts of the legislature which affect the government of Knox County and especially the school system of said county. The chancellor decided some of these issues in favor of the complainant and others in favor of the defendants, the result being that both litigants have appealed and assigned errors.

■■ We will first consider the assignments of error of defendants: (1) "The Chancellor erred in holding unconstitutional Chapter 210 of the Private Acts of 1945 which authorized the County Court of Knox County to issue bonds for the erection and repair of school buildings."

It is defendants' contention that while this special act excepts Knox County from the operation of the general law relating to the issuance of school bonds, it should be held valid because it affects the county in its governmental capacity.

The amount of school bonds authorized to be issued by the county court must not be in excess of the sum of one million dollars and, as above stated, the proceeds from the sale of such bonds are for the purpose of erecting school buildings, making repairs, purchasing lands upon which to erect buildings, provide for playgrounds, etc. Section 2 of the act provides the bonds shall be payable in twenty years from the date thereof and may be issued serially

from time to time in blocks of $100,000 or a fraction there-of. The county judge and county court clerk are empowered to sell said bonds "after a majority vote of the Quarterly County Court" in favor of their issuance. Section 8 of the act provides "that this Act is independent of and paramount to Chapter 69 of the Public Acts of 1923, and all general and special acts which require bond issues to be submitted to a vote of the people, or any Constitution or amendment to the Constitution," etc.

The act makes provision for the levying and collection of a tax upon "all the property in Knox County" for the payment of interest and to create a sinking fund for the retirement of these bonds. No provision is made for a *pro rata* distribution of funds arising from the sale of the bonds between the county and the city of Knoxville in accordance with the general law, Code section 2563.

Acting upon the authority of this private act, the County Court adopted a resolution authorizing the sale of $25,000 of said school bonds.

The chancellor held the act invalid as being in violation of Article XI, Section 8, of the Constitution, as follows: "Said Act and resolution of the County Court undertakes to suspend the general law of the State and to grant to certain individuals rights, privileges, and immunities not granted to others, and to particularly grant rights and privileges to approximately one third of the population of Knox County at the expense and contrary to the rights and interests of the remaining two-thirds of the population."

It is conceded that under the act the taxpayers of the City of Knoxville who pay approximately two-thirds of the taxes in Knox County would be compelled to carry this proportion of the million dollar indebtedness with-

out receiving any direct benefit and without having any voice in the creation of said indebtedness.

The act is in direct conflict with Code sections 2557-2569, inclusive, and especially Section 2563, which reads as follows: "In counties having a city or cities operating schools independent of said county, the trustee of said county shall pay over to the treasurer of said city that amount of said funds which shall bear the same ratio to the entire amount arising from the provisions of this article as the scholastic population of said city or cities bears to the entire scholastic population of said county; provided, however, that the said funds paid over to the said city treasurer shall be kept separate from all other funds in the manner and for the purposes herein provided for said county funds to be used."

The act is also in conflict with the general law as found in Section 10248 of the Code which requires that all bonds issued upon the credit of any county for public purposes "shall only be upon an election to be first held by the qualified voters of such county and the assent of the majority of the votes cast in said election."

In determining the validity of the act here assailed it is not important that it is in conflict with the foregoing section of the Code. *State ex rel. v. Safley, Chmn., et al.,* 172 Tenn. 385, 112 S. W. (2d) 831. The general school law providing for the issuance of bonds for school buildings provides (Code sections 2557, 2567) that the quarterly county courts may issue and sell such bonds by resolution "provided, however, that said county shall not issue an amount of bonds to exceed three per cent. of the value of the taxable property for said county." It was held in *State ex rel. v. Safley, supra,* that Code, section 10248 is not applicable where the bonds are issued for limited purposes, that is, for the erection and repair of school

buildings, etc. We think the bonds issued by the county court for school purposes, as provided in Code, section 2567, must be apportioned between the county and the City of Knoxville, as required by Code, section 2563, and, since the private act here assailed makes no provision for such apportionment, it cannot be sustained. The effect of this act is to suspend the general law of the state and to grant to Knox County rights, privileges, and immunities not granted to other counties, which is in clear violation of Article XI, Section 8, of the Constitution.

■■ We find no merit in the contention that the act must be sustained because it affects the county in its governmental capacity. In *Town of McMinnville* v. *Curtis et al.*, 183 Tenn. —, 192 S. W. (2d) 998, the majority opinion says: "The Legislature may constitutionally enact a special act affecting one particular county or municipality alone in its political or governmental capacity, provided such special act is not contrary to the provisions of a general law applicable to all the counties or municipalities and is upon a reasonable basis. Otherwise it is void." We dealt with this question in *Clark* v. *Vaughn*, 177 Tenn. 76, 146 S. W. (2d) 351, and there held that a private act affecting the Town of Athens in its political capacity was invalid because it operated to suspend the general election laws of the state and conferred a special benefit upon the town which was not enjoyed by other political subdivisions of the state, citing *State ex rel. Bales et al.* v. *Hamilton County*, 170 Tenn. 371, 95 S. W. (2d) 618, and other cases. See also *Hunter* v. *Conner*, 152 Tenn. 258, 277 S. W. 71.

It will be readily conceded that education is a governmental function. In *Gilliam* v. *Adams et al.*, 180 Tenn. 74, 171 S. W. (2d) 813, a private act which applied only to Henderson County and regulated the employment of

school teachers as to qualifications, salaries, etc., was held invalid because it was in conflict with the general school law and in violation of Article XI, Section 8, of the Constitution. The same question was considered in *State ex rel. Bales et al. v. Hamilton County, supra.*

The collection of taxes is beyond question a governmental function. 6 McQuillin, Municipal Corporations (Rev.), Sec. 2815.

In 1929, Priv. Acts 1929, chap. 502, the Legislature amended the Charter of Memphis by providing a method of collecting delinquent taxes, which was in conflict with the general law. It was there contended that the charter as thus amended should be sustained because "this act only affected the city in its political capacity, and therefore it is not violative of article eleven, section 8, of the Constitution." The act was held void because "A special law that confers the power upon a particular municipality to purchase property at a tax sale to the exclusion of all others would be void." *State v. Collier,* 165 Tenn. 28, 35, 52 S. W. (2d) 361, 363.

While the act in question does affect Knox County in its governmental capacity, it also directly and vitally affects the rights of citizens and taxpayers of the county in that it confers upon the county court the power to levy a tax upon all the property in the county for the special benefit of certain civil districts to the exclusion of others. This seems to us to be in clear violation of Article XI, Section 8, of the Constitution. It suspends the general law of the State (Code section 2563) and confers a special benefit upon particular school districts to the detriment of other districts in the same county.

The case of *Brittain v. Guthrie,* 164 Tenn. 669, 51 S. W. (2d) 848, cited by defendants, has no application here. The statute in this case authorized the issuance of bonds

without a vote of the people. This question is not before us. The act creating "the Nolensville school district," Private Acts 1931, chap. 818, and providing for the issuance of bonds to build a school house, provided that each bond show on its face to be paid only by taxes levied and collected on lands lying within the school district.

The decree of the chancellor holding the act invalid is affirmed.

■ Assignment of error No. 2: "The chancellor erred in holding illegal the appropriation of $15,000.00 in the county purpose budget for a county free library on the ground that the tax levy therefor was on all the property within the county."

At the July, 1945, term the Knox County Court approved an item for the maintenance of a county free library as follows: "14, County Library, $15,000.00."

Section 2290 of the Code empowers the county court to establish a county free library, "or to contract for library services . . ., using therefor funds raised by taxes levied for county purposes, such a library or service being declared to be a county purpose; or such court may levy for either specific purpose a property tax of not more than one mill on the dollar. *Said tax, if and when levied, shall be only on such portions of the county as are not already maintaining or taxed for maintenance of a free public library.*" (Italics ours.)

Section 2291 provides for the appointment of a library board, and Section 2292 that the county library board shall have control of all public funds for county library use.

The chancellor held the appropriation illegal "for the reason that said appropriation is taken out of the common county funds, thereby forcing the citizens and tax-

payers in the City of Knoxville to pay approximately seventy-five per cent of said appropriation, notwithstanding the fact that citizens and taxpayers in the City of Knoxville are taxed for the support of a public library in said city.''

The record shows that the City of Knoxville, within Knox County, maintains a free public library at a cost of not less than 2 cents on each $100 of taxable property in the city. We think the legislature, in passing the general law providing for county free libraries, had in mind the fact that there were no library facilities in many school districts more or less remote from the county seat of the county; that it would be necessary to levy a tax upon property in such school district for library purposes; that in those school districts adjoining the city or county seat that maintained a free library, the county could profitably contract with such city for library services. It was never contemplated by the legislature that the county court could establish one or more free public libraries outside the city and compel the taxpayers of said city to pay a tax for their maintenance in addition to the taxes paid by such citizens for their own free municipal library.

What the legislature really contemplated was, that in all counties not having a county free library the county court was authorized to appropriate county funds to establish such a library. But, where there was a free library in the county town, or elsewhere in the county, the court could levy a tax upon property in civil districts not having free library facilities, and that civil districts and towns maintaining a free library should be exempt from such a tax. Since it is conceded that the City of Knoxville is taxed to support a free library, the county court must either contract with the city for the use

of the library by students attending county schools, or establish a county free library by a tax levied upon property outside the corporate limits of the city. In thus construing the statute, we avoid both duplication of service and double taxation.

In *Warren* v. *Commerce Union Bank,* 152 Tenn. 67, 80, 81, 274 S. W. 539, 543, it is said:

. "The rule for the construction of statutes, to which all others must yield, is that the intention of the legislature must prevail. *Williams* v. *Birmingham, etc., Railroad Co.,* 129 Tenn. 680, 168 S. W. 160.

"The rule is well established that the legislative intent will prevail over the literal meaning of the words or terms found in an act. *Standard Oil Co.* v. *State,* 117 Tenn. 618, 100 S. W. 705, 10 L. R. A. (N. S.), 1015; *Board* v. *Nashville,* 134 Tenn. 612, 185 S. W. 694; *Solvent Savings, etc., Co.* v. *Walker,* 128 Tenn. 22, 157 S. W. 66."

We think the chancellor was correct in holding this appropriation to be invalid.

Assignment of error No. 3: "The Chancellor erred in holding unconstitutional Chapter 547 of the Private Acts of 1923, creating a Board of Education for Knox County, and Chapter 260 of the Private Acts of 1925 providing for the election of a County Superintendent of Public Instruction for said county."

Both of these acts apply by population only to Knox County. In each of them only voters outside the corporate limits of Knoxville are eligible to participate in the elections. Chapter 260 of the Private Acts of 1925 changes the method of election of the County Superintendent of Public Instruction, in that, for one to be eligible to hold this office, he must be a nonresident of Knoxville, but a resident of the county, and only voters

not residing within the corporation of Knoxville can participate in the election.

It is conceded by counsel for defendants that the Board of Education of Knox County and the county superintendent of schools are county officers. It has been so held by this Court in *State ex rel. Thomas* v. *Davis,* 159 Tenn. 693, 21 S. W. (2d) 623.

The Constitution of Tennessee provides (Article XI, Section 17), "No county office created by the Legislature shall be filled otherwise than by the people or the County Court." Since the members of the county board of education and the county superintendent of public schools are county officers, they must be elected either by the county court or by the qualified voters of Knox County.

Under the private acts here assailed these officers are not elected as required by the Constitution. If elected by the people, it contemplates the election by all the qualified voters of the county, not those residing beyond the corporate limits of a municipality. The ruling of the chancellor is correct, and the assignment is overruled.

Assignment No. 4: "The Chancellor erred in decreeing that the levy by the Knox County Quarterly Court at its July, 1945 term of $.03 on each $100.00 taxable property for the building, repair, and equipment of rural schools created a fund subject to division with the City of Knoxville on the basis of average daily attendance in schools, under Code section 2348, subsection 5."

The authority for such a levy by the county court is not conferred by subsection 5 of Section 2348. We think the authority for this levy is conferred by subsection 7 of Section 2346, which makes it the duty of the quarterly court "To levy such taxes for county elementary and county high schools as may be necessary to meet the

budgets submitted by the county board of education and adopted by the quarterly county court."

The tax that is here levied, as shown by Exhibit 3 to the original bill, is one of the items that was included in the budget for school purposes. Another item to be found in the budget is "elementary schools, 69 cents" and "high schools, 18 cents." The total number of items found in the budget amounts to $1.74.

The repair of school buildings and their equipment is an important item of expense in any educational program. School buildings must be kept in a reasonable state of repair and cannot be made dependent upon average daily attendance of students. Now in the instant case the quarterly court levied a special tax for this purpose, that is, to repair and equip rural schools. We think the learned chancellor was in error in holding that the fund raised from this special tax should be regarded as a part of elementary school funds and subject to division with the City of Knoxville based upon the average daily attendance.

An elementary school fund that is subject to division between the county and city is raised from the special tax of 69 cents, as provided for in the foregoing itemized budget. It is subject to distribution as provided by Code section 2348(5), which reads as follows:

"It shall be the duty of the county trustee:

. . . . .

"(5) To make quarterly distribution of all state and county elementary school funds between the county and incorporated city or cities of said county on the basis of average daily attendance immediately after each quarterly settlement with the county judge or chairman of the county court; provided, that the state school fund designated as the equalizing fund shall not be distributed on

said basis, but shall be placed to the credit of the county elementary school fund to be disbursed by the county board of education as provided in this statute.''

The quarterly county court cannot lawfully levy a special tax for the repair and maintenance, or the erection, of rural schools and use it for some other purpose and thereby avoid the division with the city as provided by the foregoing section of the Code. It must be kept separate and apart from all other school funds. We hold therefore the foregoing section of the Code does not apply to a fund raised from a special tax for the repair and upkeep of rural school buildings in the county.

This assignment is sustained and the decree of the chancellor will be accordingly modified.

Assignment of error No. 5: ''The Chancellor erred in holding that the fund raised by 18 cents levy for high schools, made at the July, 1945, term of the Quarterly County Court, was subject to division with City of Knoxville as provided by Code section 2348(5) and Code section 2412.''

We have heretofore pointed out that in the county budget for school purposes there was an item of 18 cents for high schools and 69 cents for elementary schools. It appears from the record that the county trustee makes the division of the elementary fund derived from the 69 cent levy, but he makes no division of the high school fund between the county and the city. Whether or not this is error depends upon a proper construction of the general school law.

It is the contention of defendants, and especially Knox County, that Code sections 2348(5) and 2412 do not authorize the division of high school funds. It is conceded that the City of Knoxville operates a separate school system.

292

The general education law that was enacted in 1925, Pub. Acts, chap. 115, provides only for the distribution of elementary school funds between counties and cities. Code section 2348(5). The several counties of the state and cities also are expressly authorized to levy a special tax for both elementary and high schools.

Now under the general school law, Code section 2408, provision is made for distribution of school money by the State out of what is known as an equalization fund, both counties and cities sharing in this fund according to whether or not they comply with certain conditions. All public school funds are required to be kept separate and apart from all other funds. Section 2348(1) makes it unlawful "to pay out any elementary school funds for high school purposes or high school funds for elementary school purposes." Section 2413 of the Code authorizes the county courts to levy "additional taxes as may be necessary for high school purposes," and this fund, together with state apportionment to high schools, shall be kept separate and apart from all other funds and applied exclusively for high school purposes.

In considering the intention of the legislature as to the distribution of school funds, we must look to every section of the general school law. In other words, all Code sections dealing with the same subject, that of education, must be considered *in pari materia*. When this is done, it appears that they evidence a legislative intent that there shall be no distribution of funds raised by county taxes between county high schools and high schools maintained and operated by cities.

In Section 2348(5), *supra,* the provision is clear that the trustee shall distribute only elementary school funds upon the basis of the average daily attendance. No provision is made in this or any other section of the general school

law for a division of high school funds between the county and city.

We cannot agree with complainant's counsel that Code section 2563 authorizes a division of school funds. This section relates solely to the division of money derived from the sale of bonds for the erection of school houses, etc., which have been approved by voters in a general county election.

Now since the statute mentions only one subject, i. e., the division of elementary school funds, we are justified in concluding, inferentially, at least, that high school funds were excluded by this legislative direction. Normally it is a rule of construction, well recognized by the courts, that the mention of one subject in an act means the exclusion of other subjects. This implied prohibtion is made stronger in the instant case by the statute 2348(6) which makes it the duty of the county trustee "To hold all high school funds in separate account to be disbursed on warrants of the county board of education for county high school purposes."

 ██ In addition to the foregoing provision, we find Section 2412 requires the trustee to distribute *elementary school funds* to county and city in proportion to the average daily attendance as certified by the county superintendent of schools. Again no mention is made as to distribution of high school funds.

In Section 2413 it is provided that the additional taxes levied by the quarterly county court for high school purposes, together with the state apportionment to county high schools, shall constitute a fund to be known as *the county high school fund,* which shall be applied *exclusively* for high school purposes.

There can hardly be any valid constitutional objection to a statute which levies a tax upon all the property of

the county for the benefit of the county, without allocating a part of it to cities within the county. While there is an apparent injustice in compelling citizens and taxpayers of the City of Knoxville to pay a county tax to support county high schools, we think these taxpayers are interested in having efficient public schools all over Knox County. As indicative of such an interest, the city board of education is not complaining in the instant case of any illegal distribution of county school funds. Surely the interest which the people of Knoxville have in public education extends beyond their own front door. But, if injustice flows from the failure to provide for a division of high school funds and apportionment of it to municipalities, the injustice, if any, must be corrected by the legislature. The courts have no authority to strike down a statute because in their opinion it operates unjustly in some instances.

We think the learned Chancellor committed error in this part of his decree and the assignment is sustained.

██ ██ Assignment of error No. 6: "The Chancellor erred in holding unlawful the appropriation in the general purpose budget of the Quarterly County Court, made at its July, 1945, term, of $1200.00 to pay the salaries of the members of the Board of Education, and the appropriation of $2100.00 to pay the salary of the clerk of the board. All of said officers are county officers."

The county court in its regular county purpose budget provided, among other items, the following: "Official salaries, $36,140.00." The above specified salaries are included in this item. The chancellor held that said appropriations were for school purposes and could not be made out of general county funds. No case is cited as authority for holding this to be a valid appropriation. While the board of education and the clerk of said board

are county officers, their salaries must be paid out of the general education fund.

In *State ex rel. v. Pollard*, 124 Tenn. 127, 136 S. W. 427, there was an appropriation to pay for the erection and repair of school buildings out of the general county fund. It was there held that the county court could not legally appropriate general county funds for school purposes. The same rule must apply to appropriations for the payment of salaries of public school officials. This assignment is overruled.

Assignment of error No. 7: "The Chancellor erred in holding unconstitutional and illegal the appropriation of $3500.00 by the Quarterly County Court at its July, 1945, term, for Court Committees."

The chancellor sustained the complainant's contention that this appropriation was unlawful and that "the various acts of the legislature purporting to authorize the quarterly county court to pay committees composed of its own members are unconstitutional and void and violative of Article XI, Section 8, of the Constitution, and that said acts conflict with the general law as set forth in Code sections 1874, 1875, and 1876."

We think it is the settled law of this state that contracts made by members of the county court with the county are illegal and void. *Hope v. Hamilton County*, 101 Tenn. 325, 47 S. W. 437; *Madison County v. Alexander*, 116 Tenn. 685, 94 S. W. 604; and *Cagle v. Benton County*, 181 Tenn. 235, 181 S. W. (2d) 1.

In *Hope v. Hamilton County, supra*, 101 Tenn. at page 331, 47 S. W. at page 488, it was said: "It is the policy of the law to prohibit members of the county court . . . from making contracts with their own members for any purpose which calls for compensation out of the public treasury."

▮▮ The Code sections upon which the chancellor rested his opinion clearly and unmistakably support him. Section 1874 reads as follows: "It shall not be lawful for any officer, committeeman, director, or other person whose duty it is to vote for, let out, overlook, or in any manner to superintend, any work or any contract in which any municipal·corporation, county, or the state, shall or may be interested, to be directly or indirectly interested in any such contract."

The wrong that is denounced by these Code sections is that of county officers contracting with themselves to render services to the county and paying themselves for such services out of the county treasury, thus "using their public functions and duties to subserve their private interests." *Madison County* v. *Alexander, supra.* All such contracts are declared to be illegal and unenforceable.

In *Savage* v. *Mynatt*, 156 Tenn. 119, 123, 299 S. W. 1043, 1044, Mr. Justice CHAMBLISS, speaking for the Court, said, "It was the evident intent of the lawmakers to meet a serious menace to public funds by drastic and far-reaching provisions."

▮▮ We are unable to give our assent to the suggestion that the statute has no application to payments for services in the performance of implied contracts, as where members of the county court elect themselves to committees, remaining silent as to compensation, and later appropriating funds to pay themselves. To so hold would amount to an invitation to officials who have control of the public treasury to circumvent the law and protect themselves in their ill gotten gains.

▮▮ The case of *City of Knoxville* v. *Christenberry,* 147 Tenn. 286, 247 S. W. 98, distinguishing *Hope* v. *Hamilton County, supra,* has no application to the instant

case. The chancellor's decree is correct in this regard and the assignment is overruled.

 Assignment of error No. 8: "The Court erred in declaring illegal Items 16 and 33, in the general budget adopted by the Quarterly County Court at its July, 1945, term, being 'Item 16, Emergency, $1,000.00' and 'Item 33, Miscellaneous, $3,000.00' and further erred in declaring illegal Item 2 in the County Commission budget adopted as Emergency, $2,000.00."

The Quarterly County Court at its July term made the following appropriations:

16. Emergency, · $1,000.00
33. Miscellaneous, $2,000.00

The chancellor, upholding complainant's contention, held said appropriations to be illegal and void "in that they did not inform the taxpayers of the purpose for which said appropriations were to be used, and further because thereby the quarterly county court delegated to the county judge power to dispose of said funds according to his own judgment and discretion, and that for the additional reason that said appropriations were not for a public purpose."

We think the chancellor was correct in thus holding these appropriations to be invalid. It has been repeatedly held that taxpayers have the right to know for what purpose public funds are being appropriated, and may appeal to the courts to prevent their misapplication. In *Robbins* v. *Phillips,* 175 Tenn. 568, at page 574, 136 S. W. (2d) 507 at page 509 (GREEN, C. J.), after stating that the taxpayers have a right to know for what purpose they are being taxed and to know their taxes are being properly applied, it is said: "This is necessary to enable the taxpayers to challenge a levy, if it be for a purpose not authorized by law, and if the levy is authorized, to

compel the application of the tax to the purpose for which it was in fact levied. *Kennedy* v. *Montgomery County,* 98 Tenn. 165, 38 S. W. 1075; *Southern Railroad Co.* v. *Hamblen County,* 115 Tenn. 526, 92 S. W. 238; *Southern Railroad Co.* v. *Hamblen County,* 117 Tenn. 327, 97 S. W. 455. We think, therefore, when the county court undertakes to appropriate county funds that the purpose of the appropriation must distinctly appear. In order that the taxpayers may challenge such an appropriation, if for an unauthorized purpose, and may compel its proper application, if for an authorized purpose."

In *Railroad* v. *Hamblen County,* 115 Tenn. 526, 533, 92 S. W. 238, 240, the following language is used: "The taxpayers of every county have a right to know for what purpose they are being taxed, and also to know that the taxes collected from them for any specific purpose are applied to such purpose and *not to some other, at the discretion of county officials,* and according to their ideas of public policy or expediency."

According to these well-considered authorities, the above appropriations are clearly illegal and void. The assignment of error is overruled.

Assignment of error No. 9: "The Chancellor erred in declaring and holding illegal appropriations made to charitable institutions by the Quarterly County Court at its July, 1945, term, as follows:

| | | |
|---|---|---|
| Item 30. | Knoxville Colored Orphanage | $1200.00; |
| Item 40. | Salvation Army | 250.00; |
| Item 42. | St. Johns Orphanage | 2000.00; |
| Item 45. | Travelers Aid | 500.00; |
| Item 46. | Volunteers of America | 250.00." |

The foregoing appropriations were made in the county purpose budget as shown by Exhibit No. 2 to the original bill. The complainant charged that these items are

for private purposes and pass into the hands of either private corporations or private individuals not under public control. The defendants seek to justify the appropriations as being authorized by Section 10242 of the Code, which provides: "The county court may appropriate moneys as follows: . . . (3) Poor—For the support of the poor, lunatics, and idiots."

And also Code sections 4816 and 4817, which provide as follows:

"The county court may also let out the support of the poor, with the use and occcupancy of the poorhouse and farm, for a period not exceeding three years."

"The court may also contract with any person for the support of any or all the poor of the county, upon such terms as may be deemed reasonable, for a period not exceeding one year."

The chancellor held that the county court violated Article II, Section 29, of the Constitution, which forbids public funds to be appropriated other than for public purposes. The defendants sought to have the county judge explain the purposes for which these appropriations were made, but what he said was held to be irrelevant and incompetent. There can be no doubt of the correctness of this ruling.

It is true, as held in *King* v. *Sullivan County*, 67 Tenn. 329, that the justices of the county court are the exclusive judges of whether the persons provided for are "poor persons" in the sense of the law. But in that case the record shows that the appropriations were made in favor of the parties mentioned as indigent persons. The court did not delegate to some private charity the duty of selecting those who are entitled to be provided for at public expense as is sought to be done in the instant case.

The Code sections above quoted and relied on by defendants as authority for these appropriations are inapplicable. It is not seriously contended that the county court had any contract with these several agencies or any one of them for the support of anybody. Those to whom the money was paid could use it for any purpose. It was certainly not contemplated by the legislature that the county court could make appropriations for the care of poor persons and leave to the judgment and discretion of third persons the sole right to designate those who are entitled to have the benefit of public charity. Our cases are numerous, and need not be cited, to the effect that the county court has no power to appropriate public funds for other than public or county purposes. In construing statutes defining the powers of county courts, the rule of "liberal construction" does not prevail. *Hagan* v. *Black,* 159 Tenn. 290, 17 S. W. (2d) 908.

This assignment is overruled.

◼ Assignment of error No. 10: "The Chancellor erred in allowing any attorney's fees to complainant."

The chancellor in allowing attorney's fee stated that complainant's suit "resulted in the preservation and protection of public funds of Knox County and that the relief herein granted is in the interest of said county and of its citizens and taxpayers." The defendants, in combating this opinion of the chancellor, contend that no fund has been recovered or protected out of which any fee could be paid; that even if complainant is successful the result will be to effect only saving of future taxes that would otherwise be collected from the taxpayers of the City of Knoxville and Knox County, who are not before the Court. In deciding the question before us it is not material that they are not before the Court.

Complainant's counsel has referred us to *Grant* v. *Lookout Mountain Co.*, 93 Tenn. 691, 28 S. W. 90, 27 L. R. A. 98, and *Carmack* v. *Fidelity-Bankers Trust Co. et al.*, 180 Tenn. 571, 177 S. W. (2d) 351, as authority in support of the decree of the chancellor.

It is true that counsel has rendered a great public service to the taxpayers of Knox County, for which he should be paid a reasonable fee. We do not think the cases cited support the decree which recites that "it is to be paid in the same way and manner as other judgments against said county are paid." The decree in effect is an open judgment against the county. It thus appears that there is no fund out of which a fee could be satisfied. Of course, complainant's attorney does not claim to have any contract, either express or implied, to be enforced in this case. In both the cases relied on by counsel there were specific items of property protected, if not actually recovered. In the *Grant case* the minority stockholders enjoined the sale of valuable real estate, i. e., specific property, and the owners of it were before the court. In the *Carmack case* a large amount of property had been bequeathed to the American Red Cross and it was out of this fund that the fee was ordered to be paid. In both cases there was specific property pointed out upon which a lien could be declared in favor of counsel.

▮▮ Now in the instant case the suit results in preventing the waste of public funds. The well nigh universal rule is that where counsel fees are awarded by the court the fee allowed must be paid out of a specific fund recovered, or out of specific property protected against threatened loss, or it must rest in contract, either express or implied. The principle underlying the declaration of lien for counsel fees is that there has been a re-

covery of money or property in behalf of a plaintiff litigant. *Grant* v. *Lookout Mountain Co., supra; Blackburn* v. *Clarke,* 85 Tenn. 506, 3 S. W. 505. ·

In *Pierce* v. *Lawrence,* 84 Tenn. 572, 1 S. W. 204, it was held that if the suit is not for specific land or property, or does not impound such property by some process which places it in the custody of the court, there can be no lien. See also *In re New Memphis Gas Light Co. Cases,* 105 Tenn. 268, 60 S. W. 206, 80 Am. St. Rep. 880.

The claim of counsel in the instant case for a reasonable fee against the defendant is most meritorious, but we have searched the books in vain for a rule of law which purports to authorize the rendition of a decree awarding attorneys' fees for services in protecting the public treasury from being raided by illegal appropriations. The conclusions we have reached represent not so much the will of the Court as the will of the law. Since there is no fund or property here, either impounded or protected by any order of court, upon which a lien can be declared, and no contract to be enforced, it results that the decree of the chancellor must be held erroneous.

This assignment of error is sustained.

We will next consider complainant's assignment of error No. 1: "The Court erred in adjudging the appropriation of $3500.00 for the Gibbs Community Cannery and the appropriation of $3500.00 for the Karnes Community Cannery to be lawful appropriations of common county funds."

It is insisted that this was error (1) because the appropriation was insufficient to advise the taxpayers of the purpose for which the funds were to be spent, and (2) if it was for school purposes or private purposes (as shown by oral testimony), the appropriation was unlawful.

The record before us is wholly insufficient to indicate the purpose of these appropriations. There is filed with the original bill as Exhibit No. 2 a certified copy of the "Budget for County Purposes," which shows the following items, among many others, for which appropriations were made:

"Gibbs Community Cannery ...............$3500.00
"Karnes Community Cannery ..............$3500.00"

We find nothing to indicate that this money is to be used otherwise than for a private purpose. The oral testimony introduced to show that it was to be used in "an additional training program" is irrelevant and incompetent. Another witness testified that the food that was canned in these plants was for people who did their own canning. The county judge also testified as follows: "I am not positive, but I think later on it became so popular that people even from the City of Knoxville could buy beans and peas and various things and take them down to that community cannery and can them." This testimony is likewise held to be wholly irrelevant and incompetent.

In *State* v. *True,* 116 Tenn. 294, 314, 95 S. W. 1028, 1033, Mr. Justice SHIELDS says, "The manner in which the appropriation shall be made is specially provided for by the statutes, and without compliance with the same there can be no legal appropriation and disposition of public moneys."

In *Hagan* v. *Black, supra,* 159 Tenn. at page 293, 17 S. W. (2d) at page 909, Mr. Justice SWIGGART, speaking for the Court, held that county courts in appropriating funds are confined to such as are expressly authorized by law. The following language is used: "The purposes for which a county court may appropriate money are specifically set out and enumerated, and the enumeration in the gen-

eral Code of 1858 is followed by the express limitation: 'But not for any other purpose, unless specially provided for by law.' "

We hold, therefore, that the minutes, or permanent records of the court, must show the purpose of every appropriation to the end that such fund may not be used for any other purpose, and that taxpayers may know the real purpose for which public funds are being used.

On the face of the record these appropriations are without limitation as to their use, the county reserving no right of control as to the way and manner the funds are to be used. There is no law authorizing Knox County to erect buildings in which a community cannery is to be operated for the benefit of private citizens. Moreover, if such buildings are to be erected and the canning business carried on as a part of an educational program, the funds appropriated must be taken out of school funds, not common county funds, as held in *State ex rel.* v. *Pollard, supra.*

The foregoing assignment of error is sustained.

The decree of the chancellor is affirmed, except as otherwise modified in this opinion.

The costs of appeal will be paid as the chancellor adjudged the costs in the lower court.

### On Petition to Rehear.

The complainant has filed a petition to rehear, complaining (1) that an important question was overlooked in the original opinion, to-wit, that the chancellor was in error in holding an appropriation of $1,000 for the "Knoxville Nursery School" was legal, it being Item 28 in the budget for county purposes; (2) that this Court was in error in disallowing a reasonable attorney fee for complainant's solicitor, and in not entering a judgment

against the county for $2,500 as compensation for his services; and (3) in holding that the 3 cent levy for building, repairing, and equipment of rural schools was not subject to division between the county and the City of Knoxville.

Responding to the alleged illegal appropriation above mentioned, complainant contends that, "It was unlawful for the quarterly county court to take common county funds and turn them over to the City of Knoxville, or use them for school purposes." The appropriation cannot be sustained for two reasons: (1) it is an appropriation for school purposes out of funds raise by taxation for general county purposes, and (2) it is invalid as an appropriation for the care of the poor.

In *State ex rel.* v. *Pollard,* 124 Tenn. 127, 136 S. W. 427, 428, it was expressly held that the county court has no power to make an appropriation out of the general county funds "for special county purposes," and cannot legally appropriate any part of the fund for the maintenance of public schools; that "while the maintenance of public schools in the county is a county purpose, it is not, under our statutes, a general county purpose but a special county purpose."

The county does not seriously contend that it should be sustained as a valid means of caring for the county poor, although similar appropriations had been made by the county upon that theory, such as $1,200 to the Knoxville Colored Orphanage, $2,000 to St. John's Orphanage, etc.

We think it is settled law that the quarterly county court cannot appropriate money to an individual, or an unincorporated society, as a means of taking care of the poor, unless made in fulfilment of a contract with such persons for the care of the county poor, as provided

in Code sections 4816 and 4817. Such contracts may, upon good cause shown (Code section 4819), be set aside by the county court after making due allowance for the time they have been in operation. The chancellor was in error in holding this to be a legal appropriation.

The correctness of our opinion in disallowing attorney fees is challenged upon the theory that such fees may be taxed as a part of the costs of the case, and that it was error to hold that, if the suit is not for specific land or property, or does not impound such property by some process which places it in the custody of the court, there can be no lien.

Counsel has cited *American National Bank* v. *Meadors*, 162 Tenn. 324, 36 S. W. (2d) 86, 87, as authority for taxing attorney fees in the instant case as a part of the costs. The fees which appellant questioned in the *Meadors case* were allowed to guardians *ad litem* and adjudged to be proper because they ''had rendered their services in aid of the proper administration of the estate.'' In our original opinion it was pointed out that in the *Grant case,* 93 Tenn. 691, 28 S. W. 90, 27 L. R. A. 98, and the *Carmack case,* 180 Tenn. 571, 177 S. W. (2d) 351, 353, certain property was protected from loss or preserved. For this reason the cases did not support complainant's contention. In the *Carmack case* the counsel not only rendered services to Mrs. Carmack, but to the American Red Cross, ''the principal other beneficiary'' under the will. It was there held that but for their services ''there would be no assets in the hands of these executors.'' It thus appears that fees were paid out of the estate of the decedent. It may be true, as argued by counsel, that the estate consisted of various kinds of property and no *specific item* was referred to. There is no merit in this contention. While mention is made in the original opinion of ''specific

property'' out of which fees may be paid, the words were not used in a narrow or restricted sense as meaning a particular kind of property. The issue was clearly made that there was property, regardless of its kind and character, saved for the benefit of beneficiaries under the will and under the control of the executors who were before the court.

Another case cited by counsel is *Vanderbilt University v. Mitchell,* 162 Tenn. 217, 36 S. W. (2d) 83, 86, in which attorney's fees were taxed as costs ''to be paid from the accumulated income from the trust fund.'' In this case the Vanderbilt University, as trustee under the will of Thomas E. Mitchell, filed a bill seeking a construction of the terms of the trust, and a decree approving a deviation from an express direction of the testator or creator. In passing upon the question of counsel fees, Mr. Justice Swiggart said: ''The services of all counsel have contributed to the preservation and proper execution of the trust. *'It is a doctrine of equity that a trust fund of right should bear the expenses of its own administration.'* '' Citing authorities. (Italics ours.)

With great deference to counsel, we cannot agree ''The trust funds in the hands of Vanderbilt University were no more in the possession or control of the court than were the funds in the County Treasury in this case.'' Nor can we agree that ''The treasury (of Knox County) was as much impounded as were the trust funds in the *Vanderbilt case.''*

The case of *Regan v. Babcock,* 196 Minn. 243, 264 N. W. 803, does not support complainant's contention. In this case the attorney fees were allowed and ordered paid partly out of money in the hands of the clerk of the court ($33,597.30) and the balance out of a fund to be retained by the state pursuant to a stipulation between the parties

to the suit. We are in accord with the holding of the court (196 Minn. at page 250, 264 N. W. at page 807) that attorney fees may be allowed by a court of equity *"out of the funds recovered or saved,* where a suit is brought in a representative capacity *for the benefit of an estate, municipality, or other beneficiary."* (Italics ours.) It was there properly held that in these circumstances the attorney had a common-law lien upon the sum of money recovered. In the instant case the complainant sued for himself and other taxpayers to enjoin illegal appropriations of money. Nothing was sought to be recovered on behalf of ,Knox County or any other beneficiary. While Knox County was before the Court as a defendant-litigant, the treasury of the county was not in any sense in the custody of the court. We know of no case holding or even intimating that, where counsel have by bill in equity enjoined illegal appropriations, the Court is authorized to declare lien upon the county treasury for attorney's fees, or to order such fees paid as court costs, however meritorious the services may have been. This assignment must be overruled.

▇▇ ▇▇ In response to the last assignment of error that the 3 cent levy for repair of rural schools should be divided between the county and City of Knoxville, we find no authority for making such a division. Regardless of whether the authority to levy the tax·in question is found in Subsection 7 or Subsection 8 of Code section 2346, the division so claimed cannot be made. The levy does not specify what schools are to be repaired other than "rural schools." It is conceded by counsel that there is no provision in the law for the division of this fund, except that funds raised by bond issues for the same purpose are to be divided on the basis of scholastic population as provided in Code section 2563. We cannot

agree that, where the statute provides for a capital out-
lay by the issuance of bonds for building and repairing
school houses, and requiring a division of such funds
between the county and the city operating a special school
system, a tax for the repair of rural schools must likewise
de divided. If the statute fails to require such a division,
we are without authority to direct it by judicial *fiat*.

The petition is granted for the purpose of passing upon
the question inadvertently pretermitted—that is, the al-
leged illegal appropriation for the Knoxville nursery
school. In other respects, the errors complained of are
overruled and the petition denied.